Argued and submitted March 6, decision of Court of Appeals and judgment of circuit court reversed and case remanded to circuit court for further proceedings October 18, 2001

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## JEFFREY DALE COOK,
*Petitioner on Review.*

(CC 1396-08502; CA A99394; SC S47104)

34 P3d 156

Dan Maloney, Deputy Public Defender, Salem, argued the cause for petitioner on review. With him on the briefs was David E. Groom, Public Defender.

Jennifer Scott Lloyd, Assistant Attorney General, Salem, argued the cause for respondent on review. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Carson, Chief Justice, and Gillette, Durham, Leeson, Riggs, and De Muniz, Justices.**

DE MUNIZ, J.

** Kulongoski, J., resigned June 14, 2001, and did not participate in the consideration or decision of this case. Balmer, J., did not participate in the consideration or decision of this case.

**DE MUNIZ, J.**

This is a criminal case in which defendant was convicted of possession of methamphetamine, ORS 475.992(4)(b) (1995), which the police found during a warrantless search of some clothing and a duffel bag. The Court of Appeals held that "defendant had a privacy and possessory interest in the bag and its contents before the bag was searched," but that suppression of the evidence was not required, because "defendant had abandoned his interests * * * in the bag before the search occurred." *State v. Cook*, 163 Or App 24, 31, 34, 986 P2d 1228 (1999). We allowed defendant's petition for review and now reverse the decision of the Court of Appeals.

The parties agree with the Court of Appeals' recitation of the facts, which we set out below:

> "During the hearing on the motion to suppress, Officers Petermen and Reynolds testified that on September 8, 1996, at 1:30 a.m., they went to an apartment complex after they were advised through a radio dispatch of two persons possibly trying to commit thefts from vehicles. The officers testified that they did not know the name of the caller who had informed the police department of the two suspects and did not recall descriptions of the suspects. Both officers began looking for the suspects in the parking area of the complex. Although Officer Petermen saw no broken glass, he testified that windows are not always broken when items are stolen from cars. Subsequently, for approximately two minutes, Officer Petermen observed defendant, who was bent down next to a garbage dumpster adjacent to the parking area in the process of sorting clothing into a duffel bag. Defendant's back was toward the officer. The dumpster was in a semi-enclosed area. Officer Petermen testified that, based on defendant's behavior, 'it seemed reasonable to believe that the actions that he was doing would be something consistent with somebody who had committed a theft from a vehicle.' Consequently, Officer Petermen testified that he 'contacted [defendant] in the doorway [to the area containing the dumpster], asked [defendant] to step out, [and they] backed down the hallway.' Defendant complied, after leaving the bag and clothing on the ground.

"Officer Petermen testified:

" 'A. Initially I asked [defendant] what it was he was doing. He told me he had been out for a walk when he discovered a pile of clothing there and he thought he may be able to use some of the clothing and so he was going through the clothing to find items which he may be able [to] use.

" 'Q. Did he say whether the clothing or the bag or anything in there was his?

" 'A. He said none of the items that he had been handling were his except a green army jacket also in there lying down.'

"Officer Reynolds also recalled that defendant originally 'denied that any of the property in there was his and that he had just found all the stuff inside and was going through it to see what he wanted to take home.'

"Subsequently, Officer Petermen returned to the enclosure where the dumpster was located. During that time, defendant remained outside with Officer Reynolds. When Officer Petermen searched the bag, he

" 'found clothing, [a] magazine and a syringe with a kitchen-type knife bound together with string as well as two silver spoons, one contained a white powder substance with a small piece of white colored wadding along with a second silver spoon, clear plastic baggie and a Snickers candy bar.'

"Officer Petermen also found the name, 'Doreen Cook,' written on the inside of the bag. Thereafter, the officer returned to defendant, who again denied that the bag was his. After Officer Petermen ascertained that the name of defendant's wife was Doreen Cook and indicated to defendant that that name was on the bag, defendant admitted that the bag was his."

*State v. Cook*, 163 Or App at 26-27.

Before trial, defendant moved to suppress the evidence, arguing that the seizure and search of the bag and clothing violated his privacy and possessory interests under Article I, section 9, of the Oregon Constitution. The trial court denied defendant's motion, ruling that: "[T]he officer had probable cause to suspect that a crime had been committed

and that the search of the duffel bag was reasonable under the totality of the circumstances, particularly since the defendant initially denied ownership of the bag prior to the search[.]" The trial court added that "it was completely appropriate for the officers to determine ownership of the bag, not only to return the bag to the appropriate owner but [also] to determine if [defendant's possession of] the bag had indeed been [the] result of some type of [theft]."[1]

The Court of Appeals held that "it is clear that defendant had a privacy and possessory interest in the bag and its contents before the bag was searched." 163 Or App at 31. The court also noted that "[i]t is uncontroverted that the bag belonged to [defendant] or to his wife." *Id.* That court framed the issue as "whether defendant's disclaimer of ownership should be held to be an abandonment of his protected interests in the bag," a question that the court stated "turns on whether defendant intended to forego exercising his possessory and privacy interests in the bag." *Id.* at 32. The Court of Appeals held that, under the circumstances, defendant evidenced an intent to abandon his interest in the bag and clothing before the search took place, and sustained the ruling of the trial court on that ground. *Id.* at 34. On review, defendant argues that his "disclaimer of ownership" did not constitute an abandonment of his constitutionally protected possessory and privacy interest in the property.

Article I, section 9, of the Oregon Constitution, provides that

> "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

The state agrees that the duffel bag and the clothing that defendant sorted into the bag were effects protected from unreasonable search and seizure under Article I, section 9. The state also agrees that defendant had a possessory and

---

[1] On review, the state does not argue that the officers had probable cause to seize and search items for evidence of a crime, or that the officers legally were entitled to seize and search the items to determine their ownership.

privacy interest in the bag and the clothing before the bag was seized and searched. *See State v. Owens*, 302 Or 196, 206, 729 P2d 524 (1986) (Article I, section 9, protects privacy and possessory interests). The state contends, however, that defendant "relinquished any possessory or privacy interest in the bag and its contents, by leaving the items on the ground when he agreed to talk to the officer, walking away from them and repeatedly denying that the items were his."

In *State v. Morton*, 326 Or 466, 470, 953 P2d 374 (1998), this court recognized that individual privacy rights can be "lost if, for example, the facts showed that the defendant had abandoned the container before the police seized it." In *Morton*, however, this court rejected the state's abandonment argument because the defendant had dropped the container (containing methamphetamine) as she was being seized under an invalid arrest warrant. Under the circumstances, to have allowed the evidence to be used against the defendant would have permitted the police to exploit an illegal arrest. *Id.* Although *Morton* is the most recent case in which this court considered the abandonment of property and its potential impact on individual possessory and privacy interests under Article I, section 9, this court previously dealt with this issue in a number of cases.

For example, in *State v. Purvis*, 249 Or 404, 411, 438 P2d 1002 (1968), a case decided under both the Fourth Amendment and Article I, section 9,[2] the defendant sought to suppress evidence that police had obtained from hotel maids who had removed the evidence from ash trays and waste baskets of a hotel room that the defendant had occupied. This court rejected the defendant's privacy arguments, stating:

> "Defendant's claim to privacy terminated with respect to items discarded by him and which he impliedly authorized to be hauled away. * * *
>
> "* * * * *
>
> "The objects which defendant deposited in the ash trays and waste baskets can be regarded as abandoned property."

249 Or at 410-11.

---

[2] The only reference in *Purvis* to the Oregon Constitution is the phrase, "a seizure of the property would violate the Fourth Amendment and its counterpart in our own constitution." 249 Or at 409.

In *State v. Belcher*, 306 Or 343, 759 P2d 1096 (1988), the defendant engaged in a fight at a tavern and ran from the scene before the police arrived, leaving behind a backpack. After reciting the trial court's findings that the defendant had "[left] the pack behind; [with] no indication when if ever he decided to return for it," this court agreed with the state's argument that the defendant had abandoned the backpack and that a police search for identification in the backpack did not violate Article I, section 9, or the Fourth Amendment. *Id.* at 345-46.

*State v. Pidcock*, 306 Or 335, 759 P2d 1092 (1988), involved a briefcase that was found along the side of a road and turned over to the police, who searched it for identification. Although this court concluded that the police search for identification did not violate the defendant's privacy rights under Article I, section 9, the court rejected the state's argument "that [the] defendant 'abandoned the property in a constitutional sense,' " holding:

> "Defendant did not 'abandon' the briefcase until after the deputies had opened the briefcase and opened the envelopes [found within the briefcase] and tested their contents without a warrant. When the deputies opened the briefcase and tested the contents, defendant was still actively attempting to recover that property."

*Id.* at 339.

■       Three important points emerge from the cases discussed above. First, the determination whether a defendant has relinquished a constitutionally protected interest in an article of property involves both factual and legal questions, which this court reviews in the same manner that it reviews other search or seizure questions arising under Article I, section 9. *See State v. Bea*, 318 Or 220, 230, 864 P2d 854 (1993) (court will not disturb trial court's findings of historical fact if evidence supports them; however, court not bound by trial court's ultimate holding on voluntariness of consent to search, but assesses anew whether facts suffice to meet constitutional standards).

■       Second, because Article I, section 9, protects both possessory and privacy interests in effects, property law concepts of ownership and possession are relevant, though not always conclusive, in the factual and legal determination

whether a defendant relinquished all constitutionally protected interests in an article of property.

■ Finally, for constitutional purposes, the question to be resolved in the present case is whether the defendant's statements and conduct demonstrated that he relinquished all constitutionally protected interests in the articles of property, so that both the warrantless seizure of the property and the resultant search by the police were reasonable under Article I, section 9. We now answer that question in this case.

■ Because the police did not have a warrant to seize and search the items, the state had the burden of showing by a preponderance of the evidence that the seizure and search were reasonable under Article I, section 9. ORS 133.693(4); *see State v. Tucker*, 330 Or 85, 997 P2d 182 (2000) (state failed to prove by preponderance of evidence that defendant lacked protected interest in camera case left in automobile in which defendant had been passenger).

Here, as noted earlier, the state agrees that defendant had a possessory and privacy interest in the bag and the clothing before they were seized and searched. The state argues, however, that defendant lost or relinquished his constitutionally protected interests in the bag and clothing because he left those items on the ground when he agreed to talk to the officer, he walked away from the items, and he repeatedly denied ownership of the items. For the following reasons, we reject the state's argument.

Defendant's only statements *before* the seizure and search occurred were that he discovered the pile of clothing, that the items, with the exception of an army jacket, were not his, and that he was going through the clothing to find items that he might have been able to use. The statements were responsive to Officer Petermen's inquiry as to what defendant was doing with the bag and clothes, and permitted the officers reasonably to conclude that defendant did not own the bag and clothing.

The fact that defendant told the officers that he did not own the bag and clothes did not, however, permit the officers to conclude that defendant intended to relinquish all his constitutionally protected interests in those items. Although

defendant had relinquished his immediate physical possession of the bag and clothing by leaving them on the ground, undisputedly he did so only after Officer Petermen instructed him to "step out" of the area near the dumpster where defendant was sorting the clothes into the bag. Leaving the items on the ground in compliance with the officer's request to "step out" is not conduct demonstrating an intent permanently to relinquish possession of the items or the privacy interests that accompanied the right to possess them. Under those circumstances, the officers could not have reasonably concluded that defendant intended to relinquish his possessory and privacy interests in the clothing and the bag. Thus, the seizure of the clothing and bag followed by the immediate search of those items violated defendant's possessory and accompanying privacy interests protected by Article I, section 9. *See Owens*, 302 Or at 207 ("The seizure of an article by the police and the retention of it (even temporarily) is a significant intrusion into a person's possessory interest in that 'effect.' "). Because the warrantless seizure and search of the bag and clothing was unlawful, the trial court erred in denying defendant's motion to suppress.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.