Argued and submitted June 30, affirmed October 22, 2003

## STATE OF OREGON,
*Respondent,*

*v.*

## RICHARD ABE LINVILLE,
*Appellant.*

01CR0188; A116335

78 P3d 136

Rankin Johnson IV, Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, Acting Executive Director, Office of Public Defense Services.

Kaye Ellen McDonald, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Deits, Chief Judge,* and Schuman, Judges.

EDMONDS, P. J.

---

* Deits, C. J., *vice* Kistler, J., resigned.

**EDMONDS, P. J.**

Defendant appeals from a conviction for possession of a controlled substance. ORS 475.992(4). He assigns as error the denial of his motion to suppress evidence seized from his cigarette pack. After the motion was denied, he entered into a stipulated facts trial that resulted in his conviction. We affirm.

Defendant was a passenger in an automobile that had been lawfully stopped because of a defective tail light. After contacting the driver of the vehicle, the officer became concerned that the vehicle might be stolen. Because the driver had no identification with him, the officer asked defendant for his identification so that he would have a potential witness in the event that the traffic citation for the defective light was challenged. Defendant provided the officer with his driver's license, and the officer returned to his patrol car in an effort to ascertain whether the car was stolen. Because of his suspicion about the car, he asked for a backup officer.

When the backup officer arrived at the scene, the officer approached the car again. He intended to ask the driver for permission to search the car, but he wanted defendant, who remained seated in the car, to get out first. He walked up to the passenger side of the car and asked defendant "if he had anything in his pockets that he shouldn't have, * * * drugs or anything like that. Weapons was my concern for officer safety. [Defendant] said that he didn't." The officer asked if defendant would consent to a search of his pockets, and defendant agreed. After conducting a search of defendant's pockets, the officer asked defendant to step back to the front of the patrol car. Before defendant complied, the officer asked, "[I]s there anything else in the vehicle that belongs to you[?]" The officer testified at the suppression hearing that in response to his question, "[Defendant] said, '[N]o, he did not have anything in the vehicle'."

The officer obtained consent to search the car from the driver. On the floorboard of the car, he found a pack of Camel cigarettes. The officer asked the driver if the pack of cigarettes was his, and the driver replied in the negative. The officer saw that the driver was carrying a different brand of

cigarettes. The officer then opened the cigarette pack and found marijuana and methamphetamine. Defendant subsequently admitted that the cigarette pack and the methamphetamine belonged to him. Defendant's motion to suppress in the trial court sought to exclude the above evidence, in part, on the ground that the officer conducted an unlawful search of the cigarette pack in violation of defendant's rights under Article I, section 9, of the Oregon Constitution.[1] On appeal, defendant reasserts that argument. He claims that he had a privacy interest in the cigarette pack before the stop occurred that he never abandoned. He relies primarily on *State v. Cook*, 332 Or 601, 34 P3d 156 (2001) in support of his position.

In *Cook*, two officers went to an apartment complex after they were told that two persons were possibly trying to commit thefts from vehicles. While looking for the suspects in the parking area of the complex, the officers observed the defendant, bent down next to a garbage dumpster, sorting clothing into a duffel bag. They approached the defendant and asked him to step back, believing that his behavior was consistent with someone who had committed theft from a vehicle. The defendant complied, leaving the bag and some clothing on the ground. One of the officers testified that the defendant said that "he discovered a pile of clothing there and he thought he may be able to use some of the clothing, and so he was going through the clothing to find items which he may be able [to] use." *Cook*, 332 Or at 604 (brackets in original). The other officer also testified that the defendant said he "was going through [the duffel bag] to see what he wanted to take home." *Id.* When asked, the defendant repeatedly denied that the clothing or the bag belonged to him. The ensuing search of the bag resulted in the seizure of evidence of controlled substances, and the defendant eventually admitted that the bag was his.

The trial court and this court upheld the officers' search in *Cook* on the basis that the defendant's disclaimer of

---

[1] Although defendant appears to have raised a similar issue under the Fourth Amendment to the United States Constitution in his memorandum of authorities to the trial court, he makes no argument under that provision on appeal.

ownership sufficed to constitute an abandonment of any privacy or possessory interest in the bag and its contents and to make the search of it reasonable under the circumstances. The Supreme Court disagreed. It explained,

> "Defendant's only statements *before* the seizure and search occurred were that he discovered the pile of clothing, that the items, with the exception of an army jacket, were not his and that he was going through the clothing to find items that he might have been able to use. The statements were responsive to Officer Petermen's inquiry as to what defendant was doing with the bag and clothes, and permitted the officers reasonably to conclude that defendant did not own the bag and clothing.

> "The fact that defendant told the officers that he did not own the bag and clothes did not, however, permit the officers to conclude that defendant intended to relinquish all his constitutionally protected interests in those items. Although defendant had relinquished his immediate physical possession of the bag and clothing by leaving them on the ground, undisputedly, he did so only after Officer Petermen instructed him to 'step out' of the area near the dumpster where defendant was sorting the clothes into the bag. Leaving the items on the ground in compliance with the officer's request to 'step out' is not conduct demonstrating an intent permanently to relinquish possession of the items or the privacy interests that accompanied the right to possess them. Under those circumstances, the officers could not have reasonably concluded that defendant intended to relinquish his possessory and privacy interests in the clothing and the bag. Thus, the seizure of the clothing and bag followed by the immediate search of those items violated defendant's possessory and accompanying privacy interests protected by Article I, section 9."

332 Or at 608-09 (emphasis in original).

In response to defendant's argument that *Cook* controls the outcome of this case, the state counters,

> "The point of *Cook* thus is *not* that a person cannot intentionally relinquish his privacy interest in an object, simply by disclaiming ownership of it. It is that a person does not do so, when he has asserted a privacy interest in an item *other* than ownership and the only basis for concluding that he intended to relinquish *that* interest was that he

complied with an officer's request to step away from it. In this case, defendant was given an opportunity to assert an interest in the cigarette pack in circumstances where it would have been reasonable to expect him to do so, if he wanted to retain a privacy interest in it. Because he abandoned that interest *before* [the officer's] search, no violation of Article I, section 9, of the Oregon Constitution, or the Fourth Amendment, occurred."

(Emphasis in original.)

**1-3.** Article I, section 9, of the Oregon Constitution, provides, in relevant part:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure."

The cigarette pack is an "effect" protected from unreasonable search and seizure under Article I, section 9, and defendant held possessory and privacy interests in it. The determination of whether a defendant has relinquished a constitutionally protected interest in an "effect" involves both factual and legal questions. The trial court found that "defendant specifically stated that nothing in the car belonged to him" and that "the police had no reason to doubt that" defendant abandoned any property he may have left in the vehicle.[2] Findings of fact supported by the evidence are binding on us. *State v. Bea*, 318 Or 220, 230, 864 P2d 854 (1993). However, the legal consequences of those facts is a question of law, *i.e.*, whether the seizure and search of the pack was reasonable under the circumstances. *State v. Morton*, 326 Or 466, 953 P2d 374 (1998).

The holding in *Cook* is predicated on the court's view that the defendant, by his conduct, did not intend to relinquish *all* his constitutionally protected possessory and privacy interests. 332 Or at 608. At first blush, what occurred here appears to be a similar manifestation of intent by defendant. In *Cook*, the defendant disclaimed ownership. Here,

---

[2] The officer was asked at the hearing, "And at the point in time given the conversation you'd had with [defendant] about having anything else, when you searched did you, did you believe [defendant] had anything in that vehicle?" The officer answered, "No, I didn't." He was then asked, "So you took him at his word?" The officer answered, "Yes."

defendant told the officer "No" when asked if anything else in the car belonged to him. However, the circumstances surrounding the exchange between the defendant and the officers in that case and the exchange between defendant and the officer in this case are different. In *Cook*, the Supreme Court apparently discerned that the defendant asserted some interest in retaining the clothing, although he denied ownership of the clothing and the bag. The defendant was sorting through the clothing, putting some of it in a duffel bag, when the officers first approached him. At a minimum, that conduct manifested an intent to exercise some kind of possessory interest in the bag. Significantly, the *Cook* court focused on the defendant's conduct rather than his repeated verbal denial of ownership of the bag. The court observed, "Leaving the items on the ground in compliance with the officer's request to 'step out' is not conduct demonstrating an intent permanently to relinquish possession of the items or the privacy interests that accompanied the right to possess them." *Cook*, 332 Or at 609.

The ruling in *Cook* was preceded by a discussion by the court of cases all of which involved conduct. For instance, in *Morton* the Supreme Court rejected the state's argument that the defendant's dropping a container as she was being arrested constituted an "abandonment" of her interests in the container. 326 Or at 470. In contrast, the court held in *State v. Purvis*, 249 Or 404, 410-11, 438 P2d 1002 (1968), that the defendant had abandoned any privacy interest in items that he discarded in ash trays and waste baskets because, by placing the items there, he had impliedly authorized them to be hauled away. In *State v. Belcher*, 306 Or 343, 759 P2d 1096 (1988), the defendant left behind a backpack after engaging in a fight in a tavern. The court agreed with the state's argument that the defendant had abandoned the backpack. 306 Or at 345-46. Finally, in *State v. Pidcock*, 306 Or 335, 759 P2d 1092 (1988), *cert den*, 489 US 1011 (1989), a briefcase was found along the side of a road and turned over to police who searched it for identification. At the time, the defendant was still actively attempting to recover the briefcase, leading the court to reject the state's argument that the defendant had abandoned the property in a constitutional sense. 306 Or at 339. In each of the above cases, at issue was whether an act or

conduct by the defendant manifested an intent permanently to relinquish possessory and privacy interests in a personal effect.

■    This case differs from the above cases and from *Cook* in several ways. First, defendant's intent was manifested by his words rather than his conduct. Pursuant to an investigation focused on the driver of the vehicle, defendant, a passenger in the vehicle, was directly asked whether any of his belongings remained in the car. Second, while in the view of the officer, defendant never exercised any kind of possessory interest in the cigarette pack. Consequently, it is defendant's response to the officer's inquiry that is determinative of his intent, unlike the defendant in *Cook*, where the court focused on whether the defendant's conduct of "stepping away" demonstrated an intent to relinquish what it found to be his *asserted* possessory and privacy interests. Here, defendant's verbal response, understood in the context of the circumstances, was not unlike a person who fails to assert his constitutional right to remain silent or to request an attorney after being given a *Miranda* warning. A direct implication of his negative answer to the officer's direct inquiry was that he chose at the time not to assert any possessory or privacy interest in the cigarette pack.

In *State v. Ray*, 164 Or App 145, 990 P2d 365 (1999), *vac'd and rem'd on other grounds*, 332 Or 628, 34 P3d 168 (2001), we confronted a similar issue. In that case, the defendant was a passenger in a car that had been stopped because it had expired registration stickers. The officer asked the occupants to step outside of the car. While talking with the defendant, he noticed a black gym bag on the floor in front of the right passenger seat where the defendant had been seated. The officer asked the driver if he could search the car, and the driver agreed. He then asked the defendant if he had any personal property in the car, and the defendant said, "No." A search of the bag resulted in the discovery of controlled substances. At a hearing on the defendant's motion to suppress, the defendant testified that the bag belonged to him. We framed the issue as whether the defendant had abandoned his privacy interest in the bag under Article I, section 9, when he told the officer that he did not have any property in the car. *Ray*, 164 Or App at 151. We reasoned that,

because the officer gave the defendant the opportunity to declare that the gym bag was his before the search occurred, defendant abandoned his interest before the search occurred. *Id.* at 153.

■ That reasoning applies in this case. An "abandonment" of Article I, section 9, interests in personal property occurs when there is a voluntary relinquishment of those interests. *State v. Knox*, 160 Or App 668, 675, 984 P2d 294, *rev den*, 329 Or 527 (1999). We hold on these facts that, through his reply to the officer's inquiry disclaiming that any of his possessions were in the car, defendant manifested his intent to voluntarily relinquish his privacy and possessory interests in the cigarette pack. We find no evidence in the record or in his response to the officer to suggesting that defendant did not intend to relinquish all of his interests. Moreover, defendant's response appears to have been completely voluntary and not made under the coercive effect of a police command to a criminal suspect, unlike in *Cook*. Under these circumstances, the subsequent seizure and the search of the cigarette pack by the police officer was reasonable.

Affirmed.