Argued and submitted August 27, 2008, affirmed April 29, 2009

## STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

## SHEENA BROWN,
*Defendant-Respondent.*

Washington County Circuit Court
C060902CR; A133625

206 P3d 1180

Christina M. Hutchins, Senior Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

David Ferry, Deputy Public Defender, argued the cause for respondent. With him on the brief was Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Before Wollheim, Presiding Judge, and Ortega, Judge, and Carson, Senior Judge.

ORTEGA, J.

## ORTEGA, J.

The state appeals from a pretrial order suppressing evidence obtained from the warrantless search and seizure of two bags left in a hotel room. Because we conclude that defendant had not abandoned her privacy interests in the bags, we affirm the order of suppression.

The basic facts are undisputed. A hotel clerk suspected credit card fraud and called the police after a man and a woman checked into a room. The clerk reported that the room was rented under the name of the man, Tawny Biel, but the credit card used to rent the room was under the name Katrina Ivanoff.

Officer Pfaff and a second officer responded. When Pfaff knocked on the door of the hotel room, a woman opened it. Through the doorway, Pfaff saw three people on the bed and a methamphetamine pipe with residue on the floor. She asked if anyone there had rented the room, and they all said no. Biel was not there, and no one present claimed to be Katrina Ivanoff. Defendant was present, but she had no identification. Although defendant's name is Sheena Brown, she told Pfaff that her name was Stephanie Hageman.

The hotel manager determined that the people in the room were not registered guests and, therefore, were not authorized to be there. The manager wanted them to leave.

Pfaff asked if anyone present had personal property in the room. One man claimed some shoes and a cell phone. A woman claimed ownership of a purse, which Pfaff requested and obtained consent to search. When defendant was asked if she had any belongings in the room, she claimed only a pair of flip-flops. Defendant specifically denied owning a Lancôme bag, which was next to her flip-flops, and a Nike bag. Pfaff did not look in either bag at that time.

Before the occupants of the room departed, Pfaff asked if the bags belonged to anyone, stating that the room would be locked and that, "if they needed anything from the room, they should take it." When everyone left, the hotel manager locked the room with the bags inside.

Later that day, Biel and a companion went to the hotel office so that Biel could get into the room. After being informed of Biel's return, Pfaff contacted him. Biel told Pfaff that he had rented the room and provided identification because "Sheena," who had checked into the hotel with him, had no identification. Biel also said that "Sheena" had paid for the room with a credit card.

When Pfaff asked Biel if anything in the room belonged to him, he claimed only a duffel bag and denied ownership of the Lancôme and Nike bags. Pfaff asked for consent to search the room, and Biel replied, "You can search whatever you want." After searching Biel's bag, Pfaff began to look in the Lancôme bag. As she began that search, Biel stated that the bag belonged to "Sheena." Biel's companion gave Sheena's full name as Sheena Brown.

Pfaff continued searching the bag and found a wallet containing defendant's picture and that of an unidentified male. She also found a Visa card in the name of Katrina Ivanoff, as well as notebook paper containing "profile" information such as "names, dates of birth, driver's license numbers, social security numbers, Visa numbers." Believing that she had discovered evidence of identity theft, Pfaff seized the bags. More evidence was discovered in the bags later. The state did not obtain a warrant to search or seize the bags.

Defendant was indicted on 22 counts of identity theft and moved to suppress the evidence obtained as a result of searching the Lancôme and Nike bags. She contended that the search and seizure of the bags violated her rights under Article I, section 9, of the Oregon Constitution. The state opposed the motion, arguing that defendant had abandoned any protected privacy or possessory interests in the bags. Specifically, the state contended that, by disclaiming ownership of the bags and leaving the hotel room without them, defendant had "voluntarily relinquished possession of the two bags" and "unequivocally abandoned any protected privacy or possessory interest."

The trial court granted defendant's motion to suppress. In a letter opinion, the court explained that it was "not convinced based on the totality of circumstances in this case

that the defendant demonstrated an intent to permanently relinquish possession of the items at issue or the privacy interests that accompanied the right to possess them." The state appeals from the order granting defendant's motion.

■ The state concedes that defendant had a protected interest in the bags that she could assert in a motion to suppress and that Biel's consent to a search of the hotel room was insufficient to justify a search of defendant's bags. The state argues, however, that defendant abandoned her privacy and possessory interests in the bags. In the state's view, "[w]here a defendant affirmatively and repeatedly disclaims ownership of an item after being asked if it is hers, a police officer acts reasonably by taking her at her word and searching it."

Defendant responds that her statements and conduct did not demonstrate abandonment of her bags. She contends that, because Pfaff indicated that unclaimed property would be left locked in the hotel room, the facts that defendant denied ownership of the bags and left them in the room did not show that defendant intended to permanently relinquish her interests in the bags. We agree with defendant.

■ Article I, section 9, provides, in part, that "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure[.]" The provision safeguards both possessory and privacy interests in property against unreasonable searches and seizures. *State v. Owens*, 302 Or 196, 206, 729 P2d 524 (1986). The state has the burden of proving that the warrantless search and seizure did not violate an interest protected by Article I, section 9. *See State v. Tucker*, 330 Or 85, 88-89, 997 P2d 182 (2000).

■■ If "a person gives up all rights to control the disposition of property, that person also gives up his or her privacy interest in the property in the same way that he or she would if the property had been abandoned." *State v. Howard/Dawson*, 342 Or 635, 642-43, 157 P3d 1189 (2007) (citation omitted) (concluding that, when the defendants turned their garbage over to a sanitation company without any restriction on the disposition of the garbage, they effectively abandoned that property). In determining whether a defendant has

given up interests in property, we consider whether the defendant's statements and conduct demonstrated a relinquishment of all constitutionally protected interest in the property. *State v. Cook*, 332 Or 601, 608, 34 P3d 156 (2001).

■     Disclaiming ownership of property does not necessarily demonstrate an intent to permanently relinquish all interests in the property. For example, in *Cook*, police officers were investigating a report of thefts from parked vehicles when they saw the defendant in a semi-enclosed area next to a dumpster, sorting clothing into a duffel bag. When asked to step out of that area, the defendant complied and left the clothing and bag on the ground. He denied owning the clothing or the bag and said that he had found those items and was looking for anything that he could use. While one officer spoke with the defendant, the other officer searched the bag and found methamphetamine. 332 Or at 603-04. The court framed the issue as "whether the defendant's statements and conduct demonstrated that he relinquished all constitutionally protected interests in the articles of property, so that both the warrantless seizure of the property and the resultant search by the police were reasonable under Article I, section 9." *Id.* at 608. The defendant's denial of ownership and his compliance with the officer's request to "step out" did not demonstrate that intent. *Id.* at 608-09. The defendant's conduct—sorting the clothing and putting some of it in a bag—demonstrated at least an intent to exercise a possessory interest, and his other conduct did not manifest an intent to relinquish that interest. *Id.*; *see also State v. Linville*, 190 Or App 185, 191, 78 P3d 136 (2003), *rev den*, 337 Or 34 (2004) (discerning that principle in *Cook*).

In *Linville*, the defendant was a passenger in a car that was lawfully stopped. When an officer asked the defendant if he owned anything in the car, the defendant said no. The driver consented to a search of the car, and an officer discovered a cigarette pack, which the driver denied owning; the officer then opened the pack and found drugs. 190 Or App at 187-88. We explained that the defendant's intent "was manifested by his words rather than his conduct." *Id.* at 192. Under the circumstances, the defendant's denial of ownership of any property in the car

"was not unlike a person who fails to assert his constitutional right to remain silent or to request an attorney after being given a *Miranda* warning. A direct implication of his negative answer to the officer's direct inquiry was that he chose at the time not to assert any possessory or privacy interest in the cigarette pack."

*Id.* Given the lack of any conduct by the defendant that amounted to an exercise of a possessory interest in the cigarette pack, his verbal denial of ownership manifested an intent to relinquish any interest in it. *Id.* at 192-93.

Similarly, in *State v. Standish*, 197 Or App 96, 98-99, 104 P3d 624, *rev dismissed as improvidently allowed*, 339 Or 450 (2005), the defendant, after being arrested, disclaimed ownership of the truck that he was driving and of property in the truck. The officer decided to tow the truck and inventory its contents. Although the defendant's girlfriend claimed her backpack and refused to let the officer search it, the defendant made no such effort as to the other bags found in the truck. The officer searched those bags and discovered evidence of a robbery. *Id.* We explained:

"Read together, *Cook* and *Linville* stand for the proposition that, although a disclaimer of ownership does not *necessarily* constitute abandonment of all protected interests in property, such a disclaimer may trigger an obligation by the defendant to assert a protected interest other than ownership in the property where no possessory or privacy interest may be inferred from the circumstances. The defendant in *Cook* claimed a protected nonownership interest in the property by telling the officers that he might want to keep some of the clothes and by actually possessing and asserting control over the property. The defendant in *Linville*, however, asserted no such alternative possessory interest either through his words or his conduct, and no such interest was apparent from the circumstances."

*Id.* at 101-02. Because the defendant in *Standish* had denied any interest in the bags and his comments were not contradicted by any other conduct or circumstances, the search of the bags did not violate any protected interest. *Id.* at 103.

With those principles in mind, we determine whether, when defendant stated that the bags did not belong to her and left the hotel room without them, she manifested

the intent permanently to relinquish her possessory or privacy interests. We conclude that, although defendant denied owning the bags, her conduct in leaving her bags apparently secure in the hotel room did not amount to giving up her privacy interest in that property.

Defendant left her bags in a hotel room registered to someone whom she knew, not in a public place. At the end of Pfaff's first visit to the hotel room, Pfaff stated that the room would be locked. Ordinarily, leaving property in a friend's keeping does not demonstrate an intent to relinquish any privacy interest in the property. *See State v. Tanner*, 304 Or 312, 322-23, 745 P2d 757 (1987) (concluding that the defendant retained a privacy interest in items that he entrusted to friends as security for a loan so that, when an unlawful search of the friends' home uncovered the defendant's property, his privacy interests were violated). Leaving the bags in the hotel room thus was consistent with an intent to maintain a privacy interest in the bags.

Unlike the defendants in *Linville* and *Standish*, defendant had no reason to believe that her bags would be searched if she did not assert an interest in them. Nothing in the record suggests that, at the time that defendant disclaimed ownership of the bags, police had asked or indicated an intention to ask for consent to search the hotel room or the items that might be left behind in the room. Indeed, Pfaff gave the opposite indication—that the items left behind would be locked in the room and left undisturbed until the registered guests returned to the room. Under those circumstances, disclaiming ownership of the bags and leaving the hotel room did not demonstrate an intent to relinquish any privacy interest in the bags. Because the state failed to prove that defendant had abandoned the bags, the trial court did not err by granting defendant's motion to suppress.

Affirmed.