Argued and submitted February 19, at De Le Salle North Catholic High School, Portland, Oregon, decision of Court of Appeals reversed; order of circuit court reversed, and matter remanded to circuit court for further proceedings May 27, 2010

## STATE OF OREGON,
*Petitioner on Review,*

*v.*

## SHEENA BROWN,
*Respondent on Review.*

(C060902CR; CA A133625; SC S057594)

232 P3d 962

Robert M. Atkinson, Senior Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the briefs were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

David Ferry, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause for respondent on review. With him on the brief was Peter Gartlan, Chief Defender.

DE MUNIZ, C. J.

.

## DE MUNIZ, C. J.

Defendant was charged with 22 counts of identity theft. The evidence against her derived entirely from the warrantless search of two bags that defendant had denied owning and had left in a hotel room rented by another person. Defendant moved to suppress the evidence against her on the ground that it had been obtained through a search that violated Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution. The trial court concluded that the search of the bag violated Article I, section 9, and suppressed the evidence. The Court of Appeals affirmed. *State v. Brown*, 228 Or App 197, 206 P3d 1180 (2009). We allowed the state's petition for review and now reverse.

The facts relevant to our review are undisputed. A man and a woman had checked into a hotel. The hotel room was rented under the man's name, Taunice Beal; however, the woman paid for the room with a credit card in the name of Katrina Ivanov. The clerk suspected some form of identity theft or credit card fraud and summoned the police to the hotel.

Police went to the room, which was occupied by four people, one of whom was defendant. On the floor in plain view was a methamphetamine pipe with residue. Officer Pfaff asked whether anyone in the room was either Beal or Ivanov; the four people in the room denied being Beal or Ivanov. Pfaff also asked if anyone present had rented the room; they all stated that they had not. When asked for identification, defendant claimed that she did not have any identification with her and gave the officer a false name, Stephanie Hageman.

The hotel manager arrived and, on learning that no authorized guests were in the room, instructed everyone to leave. No one protested or objected to being required to leave. Pfaff asked the people in the room if they had any personal property there. One person claimed a cell phone and shoes; another claimed a purse and sandals. Defendant claimed only a pair of sandals. While Pfaff was retrieving defendant's sandals, she noticed a black bag and asked defendant if the bag was hers. Defendant denied that it was. The officer asked

again, noting that defendant's sandals were next to the bag; however, defendant again denied owning the bag. The officer also pointed out a second black bag in the room, and asked if it belonged to defendant. Defendant twice denied owning that bag. There was also a third bag in the room—a duffel bag—which no one claimed. Pfaff asked everyone in the room if they had retrieved all of their personal possessions from the room, because the room would be locked. No one claimed anything else in the room. After everyone had left the room, the hotel manager locked the room door, rekeying the lock so that the occupants of the room would have to come to the hotel desk before they could enter the room. The officers then left.

Later that afternoon, Beal returned to the hotel with a companion, and the hotel contacted the police. Pfaff responded to the call and met with Beal. Beal stated that he had rented the room, and that a woman he knew as Sheena had paid for it with a credit card. The officer asked Beal if anything in the room belonged to him, and Beal identified the duffel bag. Pfaff asked Beal for permission to search the room, and Beal responded, " '[y]ou can search whatever you want.' " The officer first searched the duffel bag, then began searching the first black bag. The officer found a wallet that contained a photo of defendant, a credit card in the name of Katrina Ivanov, and some notebook paper containing handwritten identity information for other people (*e.g.*, names, dates of birth, driver's license numbers, Social Security numbers, etc.). At approximately the same time that Pfaff discovered the identity information, Beal told her that both black bags were owned by Sheena, and Beal's companion added that Sheena's last name was Brown. Concluding that the bag contained evidence of identity theft, the officer closed the bag, seized the other black bag, and left the hotel room. Later, at the police station, the officer further searched both bags, discovering additional evidence of identity theft.[1]

Before trial, defendant moved to suppress the evidence discovered during the search of the bags, arguing

---

[1] It is not clear from the record whether any evidence was found in the second bag.

that the warrantless search of the bags violated defendant's privacy right under Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution. In response, the state asserted that defendant had abandoned any possessory or privacy interest in the bags when she denied owning them and left them in the room. The trial court granted defendant's motion to suppress. In a letter explaining its ruling, the trial court stated: "I am not convinced[,] based on the totality of circumstances in this case[,] that the defendant demonstrated an intent to permanently relinquish possession of the items at issue or the privacy interests that accompanied the right to possess them."

The state appealed the suppression order to the Court of Appeals, which affirmed. That court concluded that the issue was "whether, when defendant stated that the bags did not belong to her and left the hotel room without them, she manifested the intent permanently to relinquish her possessory or privacy interests." *Brown*, 228 Or App at 203-04. The court held that, "although defendant denied owning the bags, her conduct in leaving her bags apparently secure in the hotel room did not amount to giving up her privacy interest in that property." *Id.* at 204. The court reasoned that defendant was leaving the bags in a secure hotel room rented by someone she knew, which "was consistent with an intent to maintain a privacy interest in the bags." *Id.* The court also noted that nothing would have suggested to defendant that her denial of an interest in the bags would cause them to be searched. *Id.* We allowed the state's petition for review to consider whether the trial court and the Court of Appeals correctly concluded that the search of the bags violated Article I, section 9.

We begin by reviewing the nature of the right guaranteed by Article I, section 9, which provides, in part:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure * * *."

The government conducts a "search" for purposes of Article I, section 9, when it invades a protected privacy interest. *See*

*State v. Crandall*, 340 Or 645, 649, 136 P3d 30 (2006) (so stating); *State v. Meredith*, 337 Or 299, 303-04, 96 P3d 342 (2004) (same); *State v. Wacker*, 317 Or 419, 426, 856 P2d 1029 (1993) (same). A protected privacy interest "is not the privacy that one reasonably *expects* but the privacy to which one has a *right*." *State v. Campbell*, 306 Or 157, 164, 759 P2d 1040 (1988) (emphasis in original; citation omitted). Accordingly, a defendant's subjective expectation of privacy does not necessarily determine whether a privacy interest has been violated. *See State v. Howard/Dawson*, 342 Or 635, 643, 157 P3d 1189 (2007) (rejecting defendants' argument that they did not expect their garbage to be searched by police after sanitation company had picked it up).

 It is true that Article I, section 9, protects "the general privacy interests of 'the people' rather than * * * the privacy interests of particular individuals." *State v. Tanner*, 304 Or 312, 320, 745 P2d 757 (1987) (footnote omitted).[2] However, it is not enough that police may have violated Article I, section 9, in some abstract sense. As *Tanner* explains, courts will suppress evidence only when a *defendant's* rights under Article I, section 9, have been violated. "[T]he search * * * must violate the defendant's section 9 rights before evidence obtained thereby will be suppressed; a defendant's section 9 rights are not violated merely by admitting evidence obtained in violation of section 9." *Id.* at 315-16.

 Here, when the officers first arrived at the hotel room, it is clear that defendant had a constitutionally protected privacy interest in both bags. She owned the bags, she was in possession of the bags, and both she and the bags were in a private room that she had paid for (admittedly under a

---

[2] *Tanner* explained the principle further:

"It is not correct * * * to say that a warrantless search of A's house violated section 9 *because* it violated A's privacy interests in the house. It would be more accurate to say that the search of A's house violated section 9 because it violated the privacy of *the house*. Given that the police have violated the privacy of the house, the question then arises whether that violation has infringed upon anyone's privacy interests. If the house proves to be abandoned, the police may have violated section 9 without violating anyone's section 9 rights."

304 Or at 321 (emphases in original).

false identity). The question is whether defendant's subsequent actions caused her to lose those constitutionally protected privacy interests.

This court's decision in *State v. Cook*, 332 Or 601, 34 P3d 156 (2001), is instructive. In *Cook*, police officers, arriving at a parking lot to investigate possible thefts from vehicles, spotted the defendant standing next to a garbage dumpster sorting clothing into a duffel bag. One officer asked the defendant to step away from the duffel bag, and defendant complied. The officer asked the defendant whether the clothing or the bag belonged to him. The defendant said that they did not, but that he had found them and was sorting through them for things to use. The officers subsequently searched the duffel bag and discovered drugs, as well as evidence that the bag did belong to the defendant.

On review, the state agreed that the defendant had a possessory and privacy interest in the duffel bag and its contents, but it argued that the defendant had relinquished that interest by denying ownership and walking away from the articles. *Id.* at 605-06. After reviewing this court's prior case law, the court identified three legal principles applicable to the analysis:

> "First, the determination whether a defendant has relinquished a constitutionally protected interest in an article of property involves both factual and legal questions, which this court reviews in the same manner that it reviews other search or seizure questions * * *.
>
> "Second, because Article I, section 9, protects both possessory and privacy interests in effects, property law concepts of ownership and possession are relevant, though not always conclusive, in the factual and legal determination whether a defendant relinquished all constitutionally protected interests in an article of property.
>
> "Finally, for constitutional purposes, the question to be resolved in the present case is whether the defendant's statements and conduct demonstrated that he relinquished all constitutionally protected interests in the articles of property * * *."

332 Or at 607-08 (citation omitted). Applying those principles, the court concluded that the evidence should have been

suppressed. *Id.* at 609. Although the defendant had denied owning the duffel bag, defendant had expressly claimed a possessory interest in it. The defendant's act of stepping away from the bag did not relinquish that possessory interest, because the defendant merely complied with the officer's direction to do so. *Id.* at 608-09.

> "Leaving the items on the ground in compliance with the officer's request to 'step out' is not conduct demonstrating an intent permanently to relinquish possession of the items or the privacy interests that accompanied the right to possess them. Under those circumstances, the officers could not have reasonably concluded that defendant intended to relinquish his possessory and privacy interests in the clothing and the bag."

*Id.* at 609.

As was true in *Cook*, the question before us is "whether the defendant's statements and conduct demonstrated that [she] relinquished all constitutionally protected interests in the articles of property[.]" *Id.* at 608. Both the trial court and the Court of Appeals concluded that defendant must be shown to have intended to relinquish *permanently* all constitutionally protected interests. *See Brown*, 228 Or App at 203-04 (considering whether defendant "manifested the intent permanently to relinquish her possessory or privacy interests").

In our view, the Court of Appeals' emphasis on "permanent relinquishment" is problematic. There are any number of circumstances in which a person relinquishes privacy interests without doing so permanently. An individual who consents to a search of an item, for example, relinquishes all constitutionally protected privacy interests in the item. Under most circumstances, however, it would be difficult to suggest that the individual has *permanently* relinquished those privacy interests, subjecting the item to search at will for the indefinite future. Additionally, a person who places an item in plain view has relinquished any constitutionally protected privacy interest in the item. That person, however, may renew the privacy interest simply by removing the item

from plain view. Similarly, a person who loses an item relinquishes some of the person's constitutionally protected interest in the property, but only to the extent necessary to search it for identification, and only so long as the item remains lost. *See State v. Pidcock*, 306 Or 335, 340-42, 759 P2d 1092 (1988), *cert den*, 489 US 1011 (1989) (lost briefcase; the court concluded that police officers lawfully could search for identification by opening the briefcase and, later, the manila envelopes contained inside it; but "[h]ad the deputies opened the manila envelopes in search of contraband, they would have violated defendant's state * * * constitutional rights"). Once the lost item is returned to its owner, all constitutionally protected interests ordinarily are renewed. Even when a privacy interest in an effect has been lost by execution of a search warrant authorizing its search and seizure, the owner or possessor can renew the privacy interest in the effect by regaining its possession. *See State v. Munro*, 339 Or 545, 552, 124 P3d 1221 (2005) (seizure of a videotape under authority of a warrant destroyed the defendant's privacy interests "[u]ntil such time as defendant regained lawful possession of the videotape").

Moreover, we do not read *Cook* to require *permanent* relinquishment. As we have quoted previously, the legal test stated by the court in *Cook* was "whether the defendant's statements and conduct demonstrated that he relinquished all constitutionally protected interests in the articles of property." 332 Or at 608. The word "permanently" occurs only once in the *Cook* opinion, when the court applied the law to the facts. In context, the court used the word "permanently" only to emphasize the transient nature of the defendant's relinquishment of possession of the property. *See id.* at 608-09 (noting that defendant had "relinquished his *immediate* physical possession" of the bag and clothing, but only at the direction of the officer, and concluding that that was "not conduct demonstrating an intent *permanently* to relinquish" either possession or the accompanying privacy interest (emphases added)).[3] In all events, if *Cook* implied such a

---

[3] The relevant part of *Cook* states:

"Although [the] defendant had *relinquished his immediate physical possession* of the bag and clothing by leaving them on the ground, undisputedly he did so only after [the officer] instructed him to 'step out' of the area near the dumpster

requirement, doing so was unnecessary to our holding in that case, and we disavow that requirement now.

Accordingly, we reject the conclusions of the Court of Appeals and the trial court that the defendant's conduct must demonstrate an intent to *permanently* relinquish all constitutionally protected interests.

With the foregoing cases and discussion in mind, we now consider "whether the defendant's statements and conduct demonstrated that [she] relinquished all constitutionally protected interests in the articles of property." *Cook*, 332 Or at 608. Defendant had a possessory and privacy interest both in the room and in the bags when she encountered the police. She relinquished her privacy interest in the room by denying that she was Katrina Ivanov and giving another (false) identity. As a result, the hotel manager insisted that defendant (and the others) leave the room. Defendant then was given an opportunity to remove her personal possessions. She repeatedly and expressly denied that the bags were hers. Defendant made no attempt to claim them or to take them with her. Her statements and actions were identical to those of a person who had no possessory or privacy interest in the bags at all. Thus, defendant relinquished, at least temporarily, her possessory and privacy interests in the two bags.

In concluding that suppression of the evidence was required, the Court of Appeals also emphasized that defendant was aware that the bags were going to be left in a locked hotel room rented by a person whom she knew. *Brown*, 228 Or App at 204. To determine whether, and to what extent, that fact is relevant to our analysis, we first review this court's prior case law regarding searches of property that has been placed in the custody of another.

---

where [the] defendant was sorting the clothes into the bag. Leaving the items on the ground in compliance with the officer's request to 'step out' is *not conduct demonstrating an intent permanently to relinquish possession* of the items or the privacy interests that accompanied the right to possess them. Under those circumstances, the officers could not have reasonably concluded that [the] defendant intended to relinquish his possessory and privacy interests in the clothing and the bag."

*Id.* at 608-09 (emphases added).

In *Tanner*, 304 Or at 312, the defendant had stolen property from his employer and pledged the property to a couple as collateral for a loan. Police discovered the property at the couple's home during an illegal search of their residence. There was no question that the illegal search of the couple's home had violated *the couple's* privacy rights; as noted previously, however, this court concluded that it needed to determine whether the search had violated *the defendant's* privacy rights. *Id.* at 315-16. The court first explained that nonresidents may have a privacy interest in the home of another. The court elaborated on that with a series of hypotheticals:

> "If A invites B to dinner at A's house and the police burst in on the dinner, it would be ludicrous to contend that the police have infringed upon a privacy interest of A but not upon a privacy interest of B. * * *

> "It is true that B, as a dinner guest, has no right to exclude the police (or anyone else) if A invites them in, but in that case the police have not violated section 9 at all. A section 9 privacy interest is an interest against the state; it is not an interest against private parties. That A controls access to the house does not preclude B from asserting a privacy interest against the state if it violates the privacy of the house.

> "Should the result be any different if, instead of inviting B to dinner, A allows B to store effects on A's premises? In both cases A has allowed B to make use of the privacy of A's house. * * * Again, B's section 9 interests will not be violated if A allows the police to enter the house and discover the effects, but that is because A controls access to the house, not because B does not have a privacy interest against the state."

*Id.* at 321-22 (footnote and citations omitted). The court concluded that "the entrustment of an effect to another is sufficient to establish a privacy interest that is violated when the effect is discovered through an unlawful search." *Id.* at 323.

The *Tanner* court then considered whether, on the facts, the defendant had a privacy interest that had been violated by the state. The court concluded that he did. In doing so, however, the court recognized that the defendant's privacy interest depended not only on the privacy of the house,

but also on the interest that the defendant had retained in the entrusted property:

> *"Had the circuit court found that defendant had sold or given away the effects, that might have been a sufficient basis for concluding that defendant no longer had a privacy interest that could be violated by the discovery of the effects,* but a person who pledges effects as collateral is in much the same position as one who entrusts effects to another for other purposes. The state contends that defendant had no immediate right of access to the tapes and equipment, but that fact alone does not preclude defendant's continuing entrustment of the effects. So long as there remained a possibility that defendant would reclaim the effects, the entrustment was sufficiently viable to demonstrate that the illegal search of the [couple's] residence violated his privacy interests under section 9."

*Id.* (citation omitted; emphasis added).

More recently, this court addressed a similar situation in *Howard/Dawson*, 342 Or 635. There, the defendants had thrown away garbage that the sanitation company had voluntarily delivered to the police. The court first noted that the defendants did not claim that they had retained any ownership or possessory interest in the garbage after the sanitation company picked it up. "If any entity had a constitutionally protected possessory interest [in the garbage], it was the sanitation company[,] but that company voluntarily turned the property over to the police." *Id.* at 640.

The only question was whether the defendants retained a protected privacy interest in the garbage. *Id.* This court concluded that they did not. "[W]hen a person gives up all rights to control the disposition of property, that person also gives up his or her privacy interest in the property in the same way that he or she would if the property had been abandoned." *Id.* at 642-43 (citation omitted). The question whether the defendants retained a constitutionally protected privacy interest in the garbage was controlled by "the legal relationship between [the] defendants and the sanitation company." *Id.* at 642; *see id.* at 641 (noting that the defendants "have not claimed that their contract with the sanitation company limited what the company could do with the garbage once the company took possession of it"). Because the

defendants "turned the garbage over to the sanitation company without any restriction on its disposition, they effectively abandoned that property." *Id.* at 642.

In light of those cases, we now return to the issue of what weight should be given in this case to defendant having left the bags in a locked room rented by someone she knew. We conclude that that fact does not affect our holding that defendant had relinquished her constitutionally protected interests in the bags. As we have already noted, defendant disclaimed ownership of the bags and voluntarily gave up possession of them. In doing so, she abandoned her bags in a locked room to which she would not have access. Defendant thus relinquished her possessory rights in the bags to Beal. *See Howard/Dawson*, 342 Or at 640 (noting that it was uncontested that the defendants had relinquished their possessory interests in garbage to the sanitation company, once the sanitation company had picked up the garbage). Because defendant had relinquished her possessory rights, she also had relinquished her privacy interests in the bags. *See id.* at 642-43 ("when a person gives up all rights to control the disposition of property, that person also gives up his or her privacy interest in the property in the same way that he or she would if the property had been abandoned"). Beal, by virtue of his control of the room, held the only remaining possessory and privacy interest in the two bags. Beal's consent to a search relinquished the remaining privacy interest in the room and its contents. *See Tanner*, 304 Or at 322 ("B's section 9 interests will not be violated if A allows the police to enter the house and discover the effects, * * * because A controls access to the house * * *."). Accordingly, when Pfaff searched the two bags, she did not violate any constitutionally protected privacy interest held by defendant. The Court of Appeals and the trial court erred in holding otherwise.

■ Defendant alternatively contends that the search violated the Fourth Amendment to the United States Constitution. It was unnecessary for the Court of Appeals to reach that question, given its resolution of the case under Article I, section 9. In accordance with principles of judicial economy, we will consider defendant's Fourth Amendment argument.

The Fourth Amendment protects against governmental violations of a defendant's reasonable expectation of privacy. *See Campbell*, 306 Or at 163 ("Since *Katz* [*v. United States*, 389 US 347, 88 S Ct 507, 19 L Ed 2d 576 (1967)], the [United States Supreme] Court has defined a Fourth Amendment search as a government action that infringes upon a 'reasonable expectation of privacy.'" (footnote omitted)). In this case, we conclude that defendant's Fourth Amendment rights have not been violated, for essentially the same reasons that we have already articulated in connection with our analysis of Article I, section 9. Defendant disclaimed ownership of the bags and voluntarily left them behind. Under the totality of the circumstances, she no longer retained a reasonable expectation of privacy in the bags at the time of the search.

The decision of the Court of Appeals is reversed. The order of the circuit court is reversed, and the matter is remanded to the circuit court for further proceedings.