Argued and submitted June 25, convictions for possession and delivery of methamphetamine reversed and remanded; remanded for resentencing; otherwise affirmed August 26, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DENNY LEE BROWN,
*Defendant-Appellant.*

Umatilla County Circuit Court
CF120153; A154630

359 P3d 413

John Evans, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Greg Rios, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Flynn, Judge.

LAGESEN, J.

**LAGESEN, J.**

Defendant was convicted in a bench trial of possession and delivery of methamphetamine.[1] Police officers found the methamphetamine, and other drug paraphernalia, when—without obtaining a warrant—they searched a McDonald's bag belonging to defendant. At trial, defendant moved to strike the evidence of the contents of the McDonald's bag,[2] arguing that the officers' search violated defendant's rights to be free from "unreasonable searches" under Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution. The trial court rejected that argument—and refused to strike the evidence—concluding that defendant had "abandoned" his McDonald's bag by the time the officers searched it, relieving the officers of the obligation to obtain a warrant. We reverse. Even when viewed in the light most favorable to the trial court's ruling, the facts here do not permit the conclusion that "defendant's statements and conduct demonstrated that he relinquished all constitutionally protected interests" in his McDonald's bag. *State v. Cook*, 332 Or 601, 608, 34 P3d 156 (2001). For that reason, the trial court erred in concluding that defendant had abandoned the bag, authorizing the officers to search it without first obtaining a warrant.

As a preliminary matter, the parties agree that defendant's motion to strike was, for all practical purposes, a motion to suppress. They agree further that we should review the trial court's ruling under the standard of review that governs our review of a ruling on a motion to suppress. We agree with the parties that that is the appropriate approach. Accordingly, we review the trial court's ruling to determine whether its findings of historical fact are supported by any evidence, and "whether the trial court applied legal principles correctly to those facts." *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). To the extent that the trial

---

[1] Defendant also was convicted of offensive littering, but he does not challenge that conviction on appeal.

[2] Defendant raised his challenge to the search of the bag by way of a motion to strike, rather than a pretrial motion to suppress, because defendant did not discover the facts giving rise to this theory of suppression until trial, after evidence of the methamphetamine had been admitted.

court did not make explicit findings of historical fact regarding a pertinent issue, "we will presume that the facts were decided in a manner consistent with the court's ultimate conclusion"—provided, of course, that the evidentiary record can support those presumed findings of fact. *Id.*

Here, the pertinent historical facts are not disputed. Defendant sideswiped two parked cars as he was driving his truck over the noon hour, but did not stop. About a block-and-a-half after sideswiping the cars, defendant parked his truck in a parking lot next to a pizza restaurant, and walked across the street to a gas station and convenience store. Defendant took a McDonald's bag with him into the store, bought a bottle of water, and left the store.

In the meantime, police, responding to reports of the hit-and-run, had located defendant's truck. One of the officers at defendant's truck noticed defendant watching from the convenience store parking lot across the street, and asked another officer, Sergeant Palmer, to contact defendant. Palmer pulled his car into the convenience store parking lot, got out of the car, and asked defendant whether he knew anything about the hit-and-run or the truck parked across the street at the pizza restaurant. Defendant was carrying his McDonald's bag and bottle of water at the time, and had been walking alongside the store in a direction away from Palmer. Defendant told Palmer that the truck was his. He explained that he had not stopped at the scene of the accident because he wanted to get the truck off of the roadway and find a phone to call in the collision. Defendant's conversation with Palmer took place next to a compressor for the store's walk-in cooler, and, at some point during the conversation, defendant set his water bottle and McDonald's bag on top of the compressor, placing them upright and next to each other.

Palmer asked defendant to go across the street with him to the truck so that they could deal with the accident. Defendant agreed, and Palmer drove defendant back across the street to his truck. Defendant left his McDonald's bag and water bottle on the compressor.

At defendant's truck, Palmer noticed items and packaging from McDonald's in the truck. That caused Palmer to wonder why defendant "was still packing around the bag

and then left it behind where I first contacted him." Palmer asked another investigating officer, Sergeant Keppinger, to get the McDonald's bag. Keppinger did so, photographing the bag and bottle of water on the compressor before he took the bag back to Palmer. Palmer opened the bag and removed the contents: a black pouch that contained methamphetamine, packaging materials, a syringe, and a spoon. After looking into the McDonald's bag, Palmer asked defendant to talk to him about the McDonald's bag. Defendant responded that he did not know anything about it. At the time that Palmer sent Keppinger to retrieve the McDonald's bag, Palmer and defendant had been back at defendant's truck for about 10 to 15 minutes.

As noted, at trial, defendant moved to strike the evidence of the contents of the bag, on the ground that Palmer impermissibly searched the bag without a warrant, in violation of Article I, section 9, and the Fourth Amendment. The trial court denied the motion. It concluded that defendant had abandoned the bag by setting it down on the compressor, leaving it on the compressor when he went back to his truck with Palmer, and then "disavow[ing] the bag" when Palmer asked him about it. The court concluded further that defendant's abandonment of the bag meant that Palmer's search of the bag did not violate defendant's rights under Article I, section 9, or the Fourth Amendment. The court subsequently convicted defendant of delivery of methamphetamine, possession of methamphetamine, and offensive littering.

In this case, the state does not dispute that defendant had constitutionally protected possessory and privacy interests in the McDonald's bag at the time that Palmer first confronted him. As a result, whether Palmer's warrantless inspection of the McDonald's bag was lawful turns on whether defendant had abandoned his constitutionally protected possessory and privacy interests in the bag at the time that Palmer opened it and inspected its contents.[3] Or, more precisely, the question is whether the state proved sufficient facts to permit the legal conclusion that defendant had abandoned

---

[3] The state does not contend Palmer's inspection of the bag was authorized under an exception to the warrant requirement if defendant did not abandon his constitutionally protected interests in the bag.

his constitutionally protected interests in the bag by the time Palmer viewed the bag's contents. *State v. Tucker*, 330 Or 85, 88-89, 997 P2d 182 (2000); *State v. McKee*, 272 Or App 372, 378, 356 P3d 651 (2015) ("The state, as the proponent of the evidence that resulted from the deputy's warrantless entry onto private property, bore the burden of proving that defendant lacked a protected privacy interest in the property."). That is, do the facts proved by the state permit the conclusion that "defendant's statements and conduct demonstrated that he relinquished all constitutionally protected interests" in the McDonald's bag before the officers searched it? *Cook*, 332 Or at 608 (articulating standard); *see also State v. Brown*, 348 Or 293, 302, 232 P3d 962 (2010) (same).[4]

They do not. Defendant did not say anything to the officers suggesting that he intended to discard the bag before they looked inside of it.[5] Defendant did not treat the bag as if it were trash by, say, wadding it up or dropping it on the ground or into a trash can. *Contrast State v. Stafford,*

---

[4] In *Cook*, the court stated that the test for abandonment is whether the "defendant's statements and conduct demonstrated that he relinquished all constitutionally protected interests" in the property searched by police. *Cook*, 332 Or at 608. However, in determining whether the property at issue in that case had been abandoned, the court applied a slightly different test, evaluating whether the searching officers had reasonably concluded that the defendant had abandoned that property. That is, the court examined whether the defendant's statements and conduct *made it reasonable for officers to conclude that the defendant had relinquished all constitutionally protected interests* in the property at issue. *Id.* at 608-09. In *Brown*, the court, quoting *Cook*, reiterated and then applied the first formulation of the test, but did not analyze or mention the second formulation. *See Brown*, 348 Or at 302-05. The difference between the two formulations is potentially significant. The first appears to require that the state demonstrate actual abandonment; the second seems to require that the state demonstrate apparent abandonment. The parties here have framed their arguments under the first formulation, so that is the one that we apply. We note, however, that we would reach the same conclusion, were we to apply the second formulation and analyze whether it was reasonable for Palmer to conclude that defendant had relinquished all constitutionally protected interests in the McDonald's bag simply by setting it down and leaving it.

[5] Although defendant "disavowed the bag" after Palmer looked inside of it, that post-inspection disclaimer has no bearing on whether defendant had relinquished his protected interests in the bag at the time Palmer inspected it. *Cook*, 332 Or at 608-09 (looking to defendant's statements and conduct before alleged search to determine whether defendant had abandoned constitutionally protected interests in property at the time of the search); *State v. Bernabo*, 224 Or App 379, 389 n 8, 197 P3d 610 (2008) (statements made after alleged search irrelevant to determination of whether defendant had abandoned constitutionally protected interest in searched property at the time of the search).

184 Or App 674, 679, 57 P3d 598 (2002), *rev den*, 335 Or 181 (2003) (defendant abandoned bag containing cocaine when, upon seeing officers, he wadded up bag and placed it between handrail and wall of stairwell and then left the building before officers retrieved the bag). Defendant also did not immediately distance himself from the bag while he was talking with Palmer. Instead, defendant set the bag down, upright, on the compressor, along with his recently purchased bottle of water, while he was talking with Palmer. But, setting what appears to be a sack lunch and a drink on a nearby flat surface while carrying on a conversation is not conduct that relinquishes all constitutionally protected interests in the property. Nothing in the case law under Article I, section 9, suggests that a citizen must keep his hands on his property at all times—even in public places—in order to retain a protected interest in that property.

That defendant left the bag behind when he went with Palmer does not lead to a different conclusion. Defendant did not move far from the bag (across the street) and had been separated from the bag for only 10 to 20 minutes when Palmer searched it. Additionally, defendant's act of leaving the bag in the parking lot was not accompanied by any words or conduct indicating that he intended to leave the bag behind. *See State v. Morton*, 110 Or App 219, 221-23, 822 P2d 148 (1991) (merely mislaying property and walking away does not constitute abandonment). If anything, the fact that he left the bag with his recently purchased bottle of water suggests some likelihood that defendant did not intend to relinquish his interests in that property. Under those circumstances, it is as likely that defendant left the bag (and water) out of inadvertence (perhaps because he was distracted by his conversation with Palmer) and did not intend to give up his interests in the bag, as it is that defendant discarded the bag.[6]

_____

[6] We note that a person who loses property does not relinquish her constitutionally protected interests in the property to the same extent as a person who discards property. When a person loses or misplaces property, she loses constitutionally protected privacy interests in the property "only to the extent necessary to search it for identification, and only so long as the item remains lost." *Brown*, 348 Or at 301 (citing *State v. Pidcock*, 306 Or 335, 340-42, 759 P2d 1092 (1988)). Thus, if defendant had left the bag inadvertently, effectively misplacing it, Article I, section 9, would nonetheless not have permitted Palmer to search it,

The state argues that, given the "low-value" nature of the bag, we should conclude that defendant's act of leaving it at the gas station, alone, leads to the conclusion that defendant abandoned it. We agree with the state that the "low-value" nature of the bag could point toward a conclusion of abandonment under different circumstances (perhaps if defendant had traveled a greater distance from the bag, and if more time had elapsed before officers conducted the search). As the state points out, our cases indicate as much. *See State v. Kendall*, 173 Or App 487, 492, 24 P3d 914 (2001) (considering the nature of the property involved). However, the "low-value" nature of the bag is but one of the circumstances of this case, and that one circumstance, when viewed in conjunction with all of the other circumstances of this case that point in a different direction, is not sufficient to support the conclusion that defendant relinquished all constitutionally protected interests in the bag.

For the above reasons, the facts proved by the state here are insufficient to permit the conclusion that defendant had abandoned the McDonald's bag at the time that Palmer opened it. As a result, the trial court erred when it denied defendant's motion to strike the evidence of the contents of the bag. That evidence was central to the state's case against defendant on the methamphetamine-related charges. Accordingly, the trial court's error was not harmless with respect to the convictions on those charges and we must reverse. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (error is harmless only if there is "little likelihood that" the error affected the verdict).

Convictions for possession and delivery of methamphetamine reversed and remanded; remanded for resentencing; otherwise affirmed.

---

in light of the fact that Palmer knew that it belonged to defendant and would have had no need to look for identification in it.