POWERS, J.
*312 *640 Defendant appeals from a judgment of conviction for unlawful manufacture of methamphetamine within 1,000 feet of a school (Count 1), ORS 475.888, and unlawful possession of methamphetamine (Count 3), ORS 475.894. He assigns error to the trial court's denial of his motion to suppress evidence obtained as a result of an officer's warrantless search of defendant's shorts pocket and subsequent search of his home pursuant to a warrant, arguing that the trial court erred when it concluded that the intrusion into his pocket was justified by the officer safety exception. We conclude that the trial court erred in determining that the search of defendant's pocket was justified by the officer's reasonable suspicion, based on specific and articulable facts, that defendant might pose an immediate threat of serious physical injury. Accordingly, we reverse and remand.
We review the denial of defendant's motion to suppress for legal error and, in so doing, "we are bound by the trial court's factual findings if there is any constitutionally sufficient evidence in the record to support them." State v. Maciel-Figueroa , 361 Or. 163, 165-66, 389 P.3d 1121 (2017). To the extent that the trial court did not make express findings regarding disputed facts, we will presume that the court found the facts in a manner consistent with its ultimate conclusion, provided that the evidence would support such findings. Id. at 166, 389 P.3d 1121. We describe the facts in a manner consistent with those standards of review.
Officer Schulke responded to a report of a man and woman punching each other in the front yard of a residence. When Schulke arrived, he did not see anyone in the front yard, but he could hear a woman inside the residence "screaming frantically" like "bloody murder." The screaming persisted as Schulke approached the residence and entered through the front door. Schulke thought someone was being assaulted.
Once inside, Schulke saw defendant on top of a woman, K, holding her down on the couch by her arms. K, who later was identified as defendant's wife, was still screaming, and Schulke noticed that her bottom lip was bleeding. Schulke then grabbed defendant in an attempt *641 to place his hands behind his back. Defendant pulled away from Schulke, tensed up, and said, "No." Schulke said, "Put your hands behind your back," but defendant again said, "No" and said that he was trying to help K. Schulke testified that defendant resisted his efforts to detain him, but was not combative. Eventually, Schulke subdued defendant by using an arm bar technique to force defendant onto the arm of the couch where Schulke was then able to handcuff defendant.
Schulke explained to K that defendant was being "detained for [Schulke's] safety and for every[one] else's involved" until another cover unit arrived. Defendant calmed down after being placed in handcuffs and was cooperative with Schulke after that point. Schulke instructed K to remain seated and stay inside the house, as Schulke walked defendant toward his patrol vehicle outside. Schulke testified that, as a single officer, it is "very difficult to watch two people, especially somebody who's not listening to your commands," and explained that he separated the two people for his safety and K's safety, as well as to conduct an investigation. As they were walking, Schulke noticed a large bulge in defendant's left pocket, weighing down his gym shorts. Schulke thought that it might be something "heavy to increase the force of a punch." Schulke conducted a patdown of defendant and reached into his pocket. He pulled out a large glass cylinder with a large crystal rock and powder inside, which was later tested and determined to be methamphetamine. Defendant was arrested for possession of methamphetamine and transported to jail.
The following day, using information gathered from defendant's arrest, a detective applied for and was granted a search warrant for defendant's home. Upon executing the warrant, evidence of a methamphetamine lab was found, and ultimately, defendant admitted to manufacturing methamphetamine in his home.
*313 Defendant was charged with unlawful manufacture of methamphetamine within 1,000 feet of a school (Count 1), unlawful delivery of methamphetamine (Count 2), and unlawful possession of methamphetamine (Count 3).
*642 Before trial, defendant filed a motion to suppress, arguing, among other things, that he was unlawfully seized when Schulke handcuffed him without probable cause that he had committed a crime or reasonable officer safety concerns. According to defendant, the subsequent search of his pocket, the application for a warrant based on that search, and the search of defendant's home were all derivative of the unlawful seizure such that the evidence obtained after the seizure should have been suppressed.
The trial court concluded that, although Schulke did not have probable cause to arrest defendant for a crime, Schulke was justified in detaining defendant using handcuffs for the safety of the officer, defendant, and the suspected victim, K. Further, the trial court concluded that the patdown and intrusion into defendant's pocket was justified by officer safety concerns because, given the assaultive nature of the situation, the officer reasonably believed that the bulge in defendant's pocket was a dangerous weapon that could be used. After the trial court denied defendant's motion to suppress, defendant entered a conditional guilty plea under ORS 135.335(3) to Counts 1 and 3, reserving the right to appeal the trial court's ruling.[1] The trial court dismissed Count 2.
On appeal, defendant challenges only the intrusion into his pocket. That is, defendant does not challenge the trial court's determination that Schulke could handcuff defendant under the circumstances or that Schulke could lawfully pat down defendant's pocket after seeing what the officer believed was a weapon. Rather, defendant contends that Schulke was not justified in reaching into his pocket to remove the hard, cylindrical object because, in defendant's view, there were no facts to establish "any suspicion[ ] that defendant posed a serious and immediate threat of physical harm to [Schulke] at the time [Schulke] searched defendant's pocket." The state responds that Schulke's search of *643 defendant's pocket was justified by reasonable safety concerns given the totality of the circumstances, including defendant's behavior leading up to the intrusion into the pocket. On this record, we conclude that the intrusion into defendant's pocket was not supported by specific and articulable facts that defendant might pose an immediate threat of serious physical injury.
To be lawful under Article I, section 9, of the Oregon Constitution, a warrantless search or seizure must fall within one of the few established exceptions to the warrant requirement. State v. Lambert , 263 Or. App. 683, 691-92, 328 P.3d 824, modified on recons , 265 Or. App. 742, 338 P.3d 160 (2014). One of those exceptions is the officer safety exception:
" Article I, section 9, of the Oregon Constitution does not forbid an officer to take reasonable steps to protect himself or others if, during the course of a lawful encounter with a citizen, the officer develops a reasonable suspicion, based upon specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officer or to others then present."
State v. Bates , 304 Or. 519, 524, 747 P.2d 991 (1987). As recently explained by the Supreme Court, the officer safety doctrine involves a two-part inquiry:
"The first inquiry concerns the existence of a reasonable suspicion on the part of the officer that a person with whom they are dealing poses an immediate threat to the officer's or another person's safety. With regard to that inquiry, *** the officer must be able to point to specific and articulable facts *** that would reasonably create a fear for the safety of the officer or others. The second inquiry pertains to whether the precautions taken were reasonable under *314 the circumstances as they reasonably appeared at the time. In the context of that inquiry, there is no requirement that the officer's choice of protective measures be justified by specific and articulable facts. *** [It] requires only that the choice [of protective measures] actually made be reasonable, even if other choices also would have been reasonable."
State v. Madden , 363 Or. 703, 713-14, 427 P.3d 157 (2018) (second ellipsis and second brackets in original; internal quotation marks and citations omitted). Here, we focus on *644 the first inquiry, viz. , whether Schulke held an objectively reasonable belief, based on specific and articulable facts, that defendant might pose an immediate threat of serious physical injury. With regard to that inquiry, the state must prove "not only that the officer subjectively believed that the defendant posed a threat, but also that the officer's belief was objectively reasonable." State v. Rodriguez-Perez , 262 Or. App. 206, 213, 325 P.3d 39 (2014).
Schulke testified generally that he was concerned for his safety and the safety of everyone else involved, and defendant does not advance an argument that Schulke lacked a subjective belief that defendant posed a threat to safety at the time of the intrusion into defendant's pocket. The question then, is whether Schulke's subjective belief was objectively reasonable under the circumstances. In determining whether an officer's belief was objectively reasonable, we consider "the totality of the circumstances as they reasonably appeared to the officer[ ] at the time." State v. Jackson , 190 Or. App. 194, 199, 78 P.3d 584 (2003), rev. den. , 337 Or. 182, 94 P.3d 877 (2004). An officer's subjective belief is objectively reasonable if it is "based on facts specific to the particular person searched, not on intuition or a generalized fear that the person may pose a threat to the officer's safety." Id. at 198, 78 P.3d 584.
In the context of a patdown search, the Supreme Court has explained that "[t]he constitution requires us to adhere to the principle that an officer's reasonable suspicion that a suspect might have a weapon on the suspect's person can justify a patdown, but that something more-such as, for example, a reasonable belief that the suspect is reaching for that weapon-is required to justify a more intrusive search." State v. Rudder , 347 Or. 14, 25, 217 P.3d 1064 (2009). Importantly, after a patdown, "an officer may not conduct a further search unless the officer develops reasonable suspicion, based on specific and articulable facts, that the person poses a serious threat of harm and that a further search would lessen or eliminate that threat." State v. Davenport , 272 Or. App. 725, 731, 357 P.3d 514, adh'd to as modified on recons , 275 Or. App. 20, 361 P.3d 669 (2015), rev. den. , 359 Or. 525, 379 P.3d 517 (2016). The search cannot be based on an "unlikely *645 hypothetical possibility that a stopped person has access to, and will use, a weapon." Id. at 732, 357 P.3d 514.
In this case, the state did not elicit from Schulke any specific and articulable facts that, after the patdown, defendant posed a serious threat of harm and that a further search-here, the intrusion into the pocket-would lessen or eliminate the threat. Rather, Schulke's testimony focused solely on the justification for the patdown and did not address why, after the patdown, the intrusion into defendant's pocket was objectively reasonable under the circumstances. Schulke testified at the suppression hearing that he could see that defendant
"had a large bulge in his left short[s] pocket. His shorts were being weighed down by that object in his pocket.
"It was *** a large object. I'd come across several people in the past who carry large objects in their pocket, they're heavy to increase the force of a punch when they hit somebody similar to a brass knuckle, but not necessarily something that goes over the knuckle. Something you just hold in your fist to make it harder and heavier.
"And so, initially, I thought that that was possibly what was in his pocket.
"And so, after I conducted the patdown and removed the object, I saw that it was actually a large glass cylinder with a large crystal rock and [an] amount of crystal powder in there as well."
Thus, there was no testimony from Schulke about what the patdown revealed nor was *315 there any testimony about why the intrusion into defendant's pocket would lessen or eliminate any threat of harm to the officer or to the suspected victim. See Davenport , 272 Or. App. at 731, 357 P.3d 514 (explaining that "to justify a search beyond a patdown for the purpose of officer safety, an officer must have an objectively reasonable suspicion that the defendant might endanger the officer by accessing the area or the item searched"). Because Schulke's testimony did not identify specific and articulable facts about why an intrusion into the pocket was reasonable under the circumstances presented in this case, the trial court erred in denying defendant's motion to suppress. *646 As previously noted, defendant's convictions in this case were the result of a conditional guilty plea under ORS 135.335(3). That statute provides:
"With the consent of the court and the state, a defendant may enter a conditional plea of guilty or no contest reserving, in writing, the right, on appeal from the judgment, to a review of an adverse determination of any specified pretrial motion. A defendant who finally prevails on appeal may withdraw the plea."
In appeals arising from conditional pleas under ORS 135.335(3), we have consistently declined to engage in a harmless error analysis. In State v. Dinsmore , 182 Or. App. 505, 519, 49 P.3d 830 (2002), we explained that ORS 135.335(3)
"provides that, if a defendant prevails on appeal, he or she may withdraw the plea. Employing a harmless error analysis would defeat that statutory right. Defendant may, on remand, decide that she wishes to withdraw her plea and go to trial, or she may choose, in light of her limited success on appeal, not to withdraw it. The legislature, however, has left that choice to defendant."
Accordingly, we reverse and remand the judgment of conviction so that defendant may decide whether to withdraw his guilty plea.
Reversed and remanded.

ORS 135.335(3) provides:
"With the consent of the court and the state, a defendant may enter a conditional plea of guilty or no contest reserving, in writing, the right, on appeal from the judgment, to a review of an adverse determination of any specified pretrial motion. A defendant who finally prevails on appeal may withdraw the plea."