Argued and submitted January 30, 2019, reversed and remanded July 1, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MISTY DAWN BUNCH,
*Defendant-Appellant.*

Coos County Circuit Court
16CR46252; A164667

468 P3d 973

Defendant appeals from a judgment of conviction for possession of methamphetamine and heroin, assigning error to the trial court's denial of her motion to suppress evidence found after police seized and searched her purse. *Held*: The trial court erred in determining that police lawfully searched defendant's purse as "lost property," and also erred in concluding that defendant could not challenge the lawfulness of the search, because she had abandoned her interest in the purse and its contents.

Reversed and remanded.

---

Martin E. Stone, Judge.

Rond Chananudech, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Hannah Hoffman, Assistant Attorney General, argued the cause for respondent. On the briefs were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Susan G. Howe, Assistant Attorney General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

ARMSTRONG, P. J.

Reversed and remanded.

**ARMSTRONG, P. J.**

Defendant appeals from a judgment of conviction for possession of methamphetamine and heroin, assigning error to the trial court's denial of her motion to suppress evidence found after police seized and searched her purse. The trial court determined that a police officer lawfully searched the purse as "lost property" to determine who owned it and return it to its owner. The court alternatively concluded that defendant could not challenge the lawfulness of the search, because she had abandoned her interest in the purse and its contents. We review the trial court's ruling on the motion for errors of law, conclude that the trial court erred, and reverse.

We state the facts consistent with the trial court's findings and its denial of defendant's motion to suppress. *State v. Turnidge (S059155)*, 359 Or 364, 395, 374 P3d 853 (2016). To the extent that the court did not make express findings, we presume that the court decided the facts in the light most favorable to the state. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968).

In response to a tip, Coos Bay Police Officer Volin went to a restaurant to arrest defendant on an outstanding probation violation warrant. As he approached, he saw that defendant was standing in front of a slot machine with a friend. Volin testified at the suppression hearing that he saw a purse on the chair in front of defendant's slot machine and he assumed that it belonged to her. After Volin arrested defendant, he asked her if the purse was hers. Defendant answered, falsely, that the purse was not hers and that it belonged to a friend who had left to run an errand. The friend standing next to defendant also denied that the purse was hers, pointing to her own purse. Volin asked the name of the friend who had left to run the errand, and defendant replied that it was Jasmine or Jayden. In response to Volin's further questions, defendant said that she did not know the friend's last name or phone number.

Volin told defendant that he would take the purse to the police station for safekeeping and that he was seeking

information about its owner so he could return it to them. Defendant then said that her cell phone and charger were in the purse and that she would like to take them with her. The purse was unzipped and open, and the cell phone and charger were sitting at the top; Volin took them out and handed them to defendant. Volin testified that at that time he did not see any identification in the purse but that he did see tobacco. Volin again asked defendant if the purse was hers, and defendant said no, that the purse belonged to a friend who had gone to buy cigarettes.

Volin testified that he drove defendant to the police station, where she was transferred to the jail. Volin testified that, because defendant had denied owning the purse, he could not send it with her to the jail. He did not inventory the purse or seek a warrant to search it. Rather, he began to go through the purse "to identify who the purse and the property belonged to so I could return it to them." Volin testified that, although he believed the purse probably belonged to defendant because it had been in close proximity to her and "technically in her possession" at the restaurant, as he went through the purse, he looked for identification to determine its ownership, because defendant had been adamant that the purse did not belong to her. Volin testified that he first removed an iPhone case and a small grey pouch, which were empty. He then removed a small collapsible metal wallet that might be used to carry ID cards. In the collapsible metal wallet Volin found bindles that were determined to contain methamphetamine and heroin. Volin then found a bright green zip-up case that contained defendant's Social Security card, an Oregon identification card for defendant, and two bank cards with her name on them. Volin took a photograph of the purse and the items it contained and concluded his search.

Lab testing confirmed that the bindles contained methamphetamine and heroin, and defendant was charged. She sought to suppress the evidence, arguing that Volin's examination of the purse was an investigatory search rather than an attempt to determine the identity of the purse's owner and that, in the absence of defendant's consent or a warrant, the search violated Article I, section 9, of

the Oregon Constitution or the Fourth Amendment to the United States Constitution.[1]

The state responded that defendant abandoned any possessory or privacy interest in the purse when she twice told Volin that it did not belong to her and when she did not assert an interest in it after Volin told her that he would take it to the police station for safekeeping. In the alternative, in the face of defendant's disclaimer, the state argued that Volin could lawfully examine the purse and its contents as lost property to determine its ownership.

In denying defendant's motion to suppress, the trial court reasoned that Volin lawfully seized the purse to search for identification, because "no reasonable officer could leave a purse just sitting *** in a business without determining whose it was." The court believed Volin's testimony that he looked through the purse to determine its owner. The court found that Volin was "merely trying to find out who[se] it was after [defendant] denied it was hers on two occasions and then specifically said, 'Hey, I've got some things in her purse that are mine. But, nothing else is mine, just those.'" The court also believed Volin's description of his search of the purse. The court determined that defendant had abandoned any possessory or privacy interest in the purse by disclaiming an interest in it, that she had thereby lost her privacy interest in the contents of the purse, and that Volin could reasonably search the purse as lost property to determine its ownership. The court denied defendant's motion to suppress, and she was convicted after a jury trial.

On appeal, defendant assigns error to the trial court's denial of her motion to suppress. She disputes the trial court's conclusion that Volin lawfully searched the purse to determine its ownership or,[2] if the search was

---

[1] Defendant only challenged the search and did not argue that Volin had unlawfully seized the purse.

[2] Defendant did not argue below and does not argue on appeal that Volin could not lawfully seize the purse at the restaurant and bring it to the police station. Although in her reply brief defendant argues that she "can challenge the search *and seizure* of the purse because she started with a protected privacy and possessory interest in the purse" (emphasis added), that argument responds to the trial court's conclusion that defendant had abandoned her constitutionally protected interest in the purse and lost her ability to challenge the search by

not lawful, that she had abandoned her constitutionally protected interest in the purse under Article I, section 9, and thereby lost her ability to challenge the search.[3] In its respondent's brief, the state does not address the lawfulness of the search and argues only that defendant abandoned her possessory and privacy interest in the purse and, hence, that her rights in the purse were not violated by the police search of it.

We begin our analysis by addressing the lawfulness of the search. Subject to certain specifically established and limited exceptions, a warrantless search by the police of a person's property is *per se* an unreasonable interference with the person's privacy interests in the property. *State v. Pilgrim*, 276 Or App 747, 750, 369 P3d 434 (2016). The state bears the burden of proving that a warrantless search did not violate a protected interest of the defendant. *State v. Tucker*, 330 Or 85, 89, 997 P2d 182 (2000); ORS 133.693(4) ("Where the motion to suppress challenges evidence seized as the result of a warrantless search, the burden of proving by a preponderance of the evidence the validity of the search is on the prosecution.").

One exception to the warrant requirement allows police to search lost property for the limited purpose of identifying the owner of the property. *State v. Pidcock*, 306 Or 335, 339, 759 P2d 1092 (1988), *cert den*, 489 US 1011 (1989). To search a property as lost, the officer must have a "good faith, subjective belief that the property is lost and that belief needs to be objectively reasonable under the circumstances." *State v. Woods*, 288 Or App 47, 54, 405 P3d 169 (2017). As noted, the trial court concluded that Volin could search the purse as lost property. The state does not attempt to justify Volin's search of the purse as a search to identify the owner of lost property. And, as explained below, that justification is not supported by the record.

---

disclaiming ownership. Defendant does not separately challenge the trial court's conclusion that Volin lawfully seized the purse at the restaurant when he brought it to the police station after defendant had disclaimed ownership of it. We therefore need not address whether the seizure was lawful.

[3] Article I, section 9, provides, in part:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure ***."

Volin testified that he believed, both at the time that he saw the purse on the chair and when he began searching it, that the purse belonged to defendant, and that he decided to search it to determine its owner only because of defendant's adamant denial. He did not testify that he believed the purse to be lost. The state contended at oral argument that the record reflects that, although Volin suspected that the purse belonged to defendant, he was not *certain*, and that he therefore could lawfully search it to determine its owner.

But uncertainty as to the purse's ownership does not translate into a subjective belief that the purse was lost. *See Woods*, 288 Or App at 54-55 (although officers did not know who owned a cellphone that had been left in their possession, they lacked an objectively reasonable belief that it was lost); *State v. Rowell*, 251 Or App 463, 472-73, 283 P3d 454, *rev den*, 353 Or 127 (2012) ("Defendant had asserted that he was watching [the laptop] for his acquaintance. The state correctly observes that the police had no legal duty to believe him, but that fact is beside the point. There is no evidence that their disbelief derived from a suspicion that the bag was 'lost.'"). Defendant had told Volin that the purse belonged to a friend; Volin suspected that it belonged to defendant. Volin testified that he searched the purse to determine its owner. Volin did not testify that he searched the purse because he thought it was lost. The trial court found credible Volin's explanation that he searched the purse to determine its owner, but the court did not find that Volin believed the purse to be lost, and the evidence in the record would not support a finding that Volin had a subjective belief that the purse was lost. Additionally, under the circumstances, we conclude that, even if Volin did subjectively believe that the purse was lost, that belief was not objectively reasonable. We conclude for those reasons that record does not support the trial court's conclusion that Volin could search the purse without a warrant as lost property.

It is not enough, however, that a search may have violated Article I, section 9, in the abstract. As the Supreme Court said in *State v. Tanner*, 304 Or 312, 320, 745 P2d 757

(1987), courts will suppress evidence only when *a defendant's* rights under Article I, section 9, have been violated. "[T]he search *** must violate the defendant's section 9 rights before evidence obtained thereby will be suppressed; a defendant's section 9 rights are not violated merely by admitting evidence obtained in violation of section 9." *Id.* at 315-16. Whether Volin's search of defendant's purse violated *defendant's* rights under Article I, section 9, turns on whether defendant had a constitutionally protected privacy interest in the purse at the time of the search. *See State v. Owens*, 302 Or 196, 206, 729 P2d 524 (1986) ("Article I, section 9, protects privacy and possessory interests.").

It is undisputed that defendant owned the purse and that it was in her possession when Volin first approached her. We conclude that she had a protected possessory interest in it at that time. *See State v. Morton*, 326 Or 466, 469-70, 953 P2d 374 (1998) (if a defendant has actual or constructive possession of property immediately before it is searched, the defendant has a constitutionally protected possessory interest in that property). The state contends that defendant lost that possessory interest, as well as her privacy interest in its contents, after she twice disclaimed ownership of the purse and then did not assert that it was hers after Volin announced that he would bring it to the police station to look for identification.

A person can lose a constitutionally protected possessory and privacy interest in property by abandoning it. *State v. Jones*, 280 Or App 135, 138, 380 P3d 1132 (2016) (a person's Article I, section 9, rights are not violated if that person abandons his or her possessory or privacy interests in an item before it is searched); *State v. McClatchey*, 259 Or App 531, 538, 314 P3d 721 (2013) ("A defendant's rights are not violated if the defendant abandoned his or her possessory or privacy interests in an item before it was searched[.]"). In determining whether a person has abandoned a constitutionally protected interest in an article of property, the court considers whether the defendant's statements and conduct, in light of the totality of the circumstances, demonstrated that the person unequivocally relinquished all constitutionally protected interests in the property. *State v. Brown*, 348

Or 293, 302, 232 P3d 962 (2010); *see also Pilgrim*, 276 Or App at 753 (in order to "relinquish a person's constitutionally protect[ed] interests in an object * * * the person must unequivocally manifest an intention to do that"); *Rowell*, 251 Or App at 474 (in determining whether a person has abandoned a protected possessory or privacy interest, we examine the totality of the circumstances, as known at the time of the search).

Whether a person's statements and conduct unequivocally demonstrate that the person has relinquished all constitutionally protected interests in property involves both factual and legal questions, which we review in the same manner as we review other search or seizure questions under Article I, section 9. *State v. Cook*, 332 Or 601, 607, 34 P3d 156 (2001). Thus, we defer to the trial court's findings of historical fact if evidence supports them but determine as a matter of law whether those facts are sufficient to constitute abandonment. The state, as the proponent, bears the burden of proving by a preponderance of the evidence that a defendant has abandoned her constitutionally protected interests in the property. *See State v. McKee*, 272 Or App 372, 378, 356 P3d 651 (2015); *State v. Knox*, 160 Or App 668, 673, 984 P2d 294, *rev den*, 329 Or 527 (1999) ("[T]he state has the burden of proving the negative proposition that no interest of the defendant's was involved.").

In *State v. Ipsen*, 288 Or App 395, 406 P3d 105 (2017), we identified six factors that, depending on the circumstances, might bear on the determination whether a person has abandoned an interest in property: (1) whether the defendant separated herself from the property as a result of police instruction or illegal police conduct; (2) whether the defendant left the property on public or private property; (3) whether the defendant "made any attempt to hide the property or in any other way manifest an intention to the police that he * * * was attempting to maintain control over it"; (4) whether the defendant "has left his property under circumstances which objectively make it likely that others will inspect it"; (5) whether the defendant has placed the item in plain view; and (6) whether the defendant gave up his rights to control the disposition of the property. 288 Or App at 399-400.

We have considered all of those factors. Most of them do not bear directly on our inquiry, because they relate to a circumstance where the police recover property after the person has left it behind. There is no dispute that defendant did not leave the purse as a result of police instruction, that she disclaimed ownership to it voluntarily, without attempting to conceal it, and that she knew that Volin would bring it with him to the police station. In fact, she did not leave the purse at all. The only question is whether, by disclaiming ownership and allowing Volin to take the purse, defendant also gave up her right to control the disposition of the purse. The state contends that defendant abandoned the purse first by disclaiming her ownership interest in it and then by not asserting control over the purse when Volin seized it.

Abandonment requires an unequivocal manifestation of an intention to relinquish all constitutionally protected interests in the affected property. *Brown*, 348 Or at 302. A disclaimer of ownership of an item may, but does not necessarily, demonstrate an abandonment of all constitutionally protected interests in the item. *Cook*, 332 Or at 607-08. ("[B]ecause Article I, section 9, protects both possessory and privacy interests in effects, property law concepts of ownership and possession are relevant, though not always conclusive, in the factual and legal determination whether a defendant relinquished all constitutionally protected interests in an article of property."). The surrounding circumstances will determine the effect of the disclaimer. Unless a possessory or privacy interest may be inferred from the circumstances, a disclaimer of ownership "may trigger an obligation by the defendant to assert a protected interest other than ownership in the property." *Standish*, 197 Or App 96, 101-02, 104 P3d 624 (2005). Citing *Standish*, the state contends that, after defendant disclaimed ownership of the purse, in order to protect any possessory or privacy interest in the purse, defendant should have asserted that interest before Volin seized it. But the circumstances existing at the time that Volin seized the purse required the inference that, despite having disclaimed ownership, defendant did not intend unequivocally to relinquish a possessory or privacy interest in the purse. *See id*. at 102. Volin saw that defendant had the purse next to her while playing a slot machine,

and that it was open and contained some of her belongings. Defendant claimed ownership of some items in the purse and requested that Volin give them to her. Defendant's explanation, that the purse was owned by a friend who had left to run an errand, may have been a disclaimer of ownership, but did not express an unequivocal intention to relinquish a possessory or privacy interest in the purse. Finally, defendant did not physically "abandon" the purse by leaving it behind unattended. She merely acquiesced in Volin's decision to bring the purse with him to the police station. As the state acknowledged at oral argument, a denial of ownership is a common subterfuge of those possessing contraband. The circumstances all point to the inference that, despite her disclaimer of ownership, defendant maintained possessory and privacy interests in the purse.

Contrary to the state's argument, defendant's failure to object when Volin announced that he would take the purse for safekeeping also did not establish a voluntary relinquishment of a possessory or privacy interest. *See State v. Jepson*, 254 Or App 290, 294, 292 P3d 660 (2012) ("mere acquiescence" to police authority does not constitute consent); *see also Tucker*, 330 Or at 88-89 (a defendant is not required to assert a property or privacy interest in property that the police searched; rather, the burden is on the state to prove that the warrantless search did not violate a protected interest of the defendant). For all those reasons, we conclude that defendant did not abandon the purse or give up her right to challenge the unlawful warrantless search. We conclude, therefore, that trial court erred in denying defendant's motion to suppress.

Reversed and remanded.