Argued and submitted November 18, 2019, reversed and remanded
September 16, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

NICHOLAS VERN LEWIS,
aka Nicholas V. Lewis,
*Defendant-Appellant.*

Clackamas County Circuit Court
16CR45285; A167134

474 P3d 907

Defendant appeals after entering a conditional plea, assigning error to the trial court's denial of his motion to suppress evidence discovered in his backpack during a warrantless search by police. On appeal, defendant asserts that the warrantless search was unlawful in violation of Article I, section 9, of the Oregon Constitution. The state argues that defendant abandoned his constitutionally protected interests in the backpack when he left it inside of a stolen vehicle and that, therefore, defendant is not entitled to suppression of the evidence. Alternatively, the state contends that the warrantless search was permissible under the exception to the warrant requirement for lost property. *Held*: The trial court erred in denying defendant's motion to suppress. The state failed to meet its burden of proving that defendant unequivocally manifested an intention to relinquish his protected interests in the backpack. Further, the search did not fall within the exception to the warrant requirement for lost property because the officer's belief that the backpack was lost was not reasonable under the circumstances.

Reversed and remanded.

Douglas V. Van Dyk, Judge.

Andrew D. Robinson, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Shorr, Judge, and James, Judge.

SHORR, J.

Reversed and remanded.

**SHORR, J.**

Defendant appeals after entering a conditional plea in which he reserved a right to challenge multiple rulings by the trial court. Defendant raises 13 assignments of error. We write only to address defendant's twelfth assignment of error, in which defendant challenges the trial court's denial of his motion to suppress evidence discovered in his backpack during a warrantless search.[1] We affirm defendant's first through seventh, ninth through eleventh, and thirteenth assignments of error without written discussion. We do not reach defendant's eighth assignment of error.[2] We conclude that the trial court erred in denying defendant's motion to suppress, because the state failed to meet its burden of proving that defendant unequivocally relinquished his constitutionally protected interests in the backpack. Accordingly, we reverse and remand to the trial court for further proceedings.

We state the facts consistently with the trial court's findings and its denial of defendant's motion to suppress. *State v. Bunch*, 305 Or App 61, 62, 468 P3d 973 (2020). On March 6, 2016, Officer Mansfield responded to a report of an intoxicated driver. The 9-1-1 caller reported that a Toyota Tundra truck was swerving and that the driver was a man and the passenger was a woman. At some point, according to the caller, the man and woman switched roles so that the woman was driving and the man was the passenger.

Another officer, Warner, located the truck at a gas station before Mansfield arrived. When Mansfield arrived, Warner told Mansfield that the man, defendant, claimed to

---

[1] In reserving his rights to challenge the trial court's rulings, defendant refers to this ruling as the denial of "Defendant's Second Motion to Suppress (Washington County)."

[2] Defendant's eighth assignment of error pertains to the trial court's disallowance of defendant's demurrer to Count 2 of the indictment, which, in reserving his right to challenge the court's rulings, defendant refers to as "Demurrer to Count 2 (Identity Theft) for Violation of ORS 132.630." Although we do not reach defendant's eighth assignment of error or the arguments therein, should defendant withdraw his plea on remand, he may raise those arguments again, and the trial court may choose to consider its ruling anew with respect to those arguments.

be the registered owner of the truck.[3] Dispatch reported to Mansfield that the registered owner of the truck was born in 1946, but defendant appeared to be significantly younger. Defendant and his friend, Hasbrook, entered the convenience store adjoining the gas station. When defendant and Hasbrook exited the store, Mansfield spoke with defendant, who denied driving the truck. Defendant also told Mansfield that he was not the registered owner.

While defendant was speaking with the officers, Hasbrook drove the truck away. Warner and Mansfield continued to investigate defendant for driving under the influence of intoxicants (DUII). Approximately 10 to 15 minutes after Hasbrook drove away, the officers determined that defendant was not impaired, and defendant left on foot. After defendant left the gas station, the officers became suspicious that the truck was stolen and decided to search the nearby area to determine if defendant and Hasbrook "had dumped the car somewhere." The officers found the truck unoccupied and parked "just north of the gas station." Mansfield testified that the truck was parked "[m]aybe less than a block" or "[m]aybe 40 yards" away from the gas station.

Warner contacted the registered owner of the truck, who confirmed that he had not authorized anyone to use the truck or remove it from his garage. The officers called a K-9 unit to assist them. While the officers were waiting for that unit, Hasbrook emerged from nearby bushes. The officers arrested her. With the assistance of the K-9 unit, the officers also located defendant hiding in a dumpster "just north" of the gas station. Defendant was arrested and taken into custody. Mansfield searched defendant's person and found a key fob to the truck in his possession.

The officers noticed two backpacks in the back seat of the truck. Mansfield called the owner to ask if he had left backpacks in the truck. The owner replied that he had not and gave Mansfield permission to search the vehicle. Mansfield removed the backpacks, and another officer transported them to the police station. According to Mansfield,

---

[3] Because Warner did not testify at the motion to suppress hearing, the record is minimal with respect to Warner's interaction with defendant and the exact progression of events that occurred before Mansfield's arrival.

he did not search the backpacks at the scene because he did not know who owned them. Although Mansfield did not know who the backpacks belonged to at that time, he testified that it had "crossed [his] mind" that the backpacks could belong to defendant and Hasbrook. Mansfield did not speak to defendant or Hasbrook about the backpacks, nor did any other officer at the scene. The next day, Mansfield and Warner searched the backpacks. Mansfield testified that their purpose in searching the backpacks was to determine who they belonged to. The officers discovered evidence in one of the backpacks linking defendant to a burglary.

The state charged defendant with various crimes related to that alleged burglary and the theft of the Toyota Tundra. Defendant moved to suppress the evidence discovered in the backpack, contending that the state unlawfully searched the backpack without a warrant in violation of Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution. The state argued that defendant had abandoned the backpack when he left it in the stolen car and, therefore, defendant was not entitled to suppression of the evidence. The state also contended that, if defendant had not abandoned the backpack, then the warrantless search was permissible under the exception to the warrant requirement for lost property.

In a letter opinion, the trial court denied defendant's motion, concluding that defendant "abandoned whatever constitutionally protected interest he might have had in the [backpacks] when he left them with Ms. Hasbrook in the stolen Tundra." The court attributed that conclusion to three factors. First, "no police instruction or conduct caused defendant to separate himself from the [backpacks]." Second, "[t]he vehicle was not found on a private property with any apparent connection to defendant." Third, "[l]eaving unmarked, untagged bags inside someone else's truck and walking away, particularly when the truck is stolen, is conduct that demonstrates a relinquishment of any constitutionally protected right of privacy in the property." Thus, according to the court, defendant "did not manifest an intention to maintain control over the property."

On appeal, defendant assigns error to the trial court's denial of his motion to suppress the evidence discovered inside of the backpack. Defendant contends that the state failed to meet its burden of proving that defendant relinquished his constitutionally protected rights in the backpack by abandoning it. Therefore, defendant asserts, the warrantless search violated defendant's rights under Article I, section 9.[4] The state reprises its arguments from the trial court, that defendant abandoned the backpack when he left it in the truck, and that, if defendant did not abandon the backpack, then the warrantless search was permissible under the exception to the warrant requirement for lost property.

We begin by addressing the state's contention that the search fell within the exception to the warrant requirement for lost property. Article I, section 9, protects people against unreasonable searches and seizures. Subject to limited exceptions, a warrantless search by the police of a person's property is *per se* unreasonable. *Bunch*, 305 Or App at 65. Where, as here, the police conduct a warrantless search, the state bears the burden of proving that the warrantless search did not violate a protected interest of the defendant. *State v. Cook*, 332 Or 601, 608, 34 P3d 156 (2001).

Under certain conditions, police may search lost property without a warrant to determine the identity of the owner. "To search lost property, officers need to have a good faith, subjective belief that the property is lost and that belief needs to be 'objectively reasonable under the circumstances.'" *State v. Woods*, 288 Or App 47, 54, 405 P3d 169 (2017) (quoting *State v. Vanburen*, 262 Or App 715, 728, 327 P3d 555 (2014)). Lost property is "property which the owner has unwittingly suffered to pass out of his possession, and the whereabouts of which he has no knowledge." *Id*.

Applying the above standard, we conclude that the search of defendant's backpack does not fall within the exception to the warrant requirement for lost property. Mansfield testified that it had "crossed [his] mind" that the

---

[4] Defendant does not argue, as he did to the trial court, that the warrantless search violated defendant's rights under the Fourth Amendment.

backpacks might belong to defendant and his friend. That testimony suggests that, although the owner's identity may have been uncertain, Mansfield did not have a subjective belief that the backpacks were lost. *See Bunch*, 305 Or App at 66 (explaining that "uncertainty as to *** ownership does not translate into a subjective belief that [the property] was lost"). And, even assuming that Mansfield did believe that the backpacks were lost, that belief was not reasonable under the circumstances. When Mansfield searched defendant's backpack, he knew that the backpacks were found in a stolen vehicle and that they did not belong to the vehicle's owner. Mansfield also knew that defendant and his friend were driving that stolen vehicle immediately prior to his discovery of the backpacks. Under those circumstances, it was not reasonable for Mansfield to believe the backpacks were lost. Therefore, the search does not fall within the exception to the warrant requirement for lost property. Because the state has not presented alternative exceptions to the warrant requirement that apply here, the search was unreasonable in violation of Article I, section 9.

Having concluded that the warrantless search was unlawful, we must determine whether that search violated *defendant's* Article I, section 9, rights. *Id*. at 66-67; *see also State v. Tanner*, 304 Or 312, 320, 745 P2d 757 (1987) ("The question of whose privacy rights have been violated is logically separate from the question whether section 9 has been violated."). Whether the search of defendant's backpack violated defendant's rights under Article I, section 9, turns on whether defendant had a constitutionally protected privacy interest in the backpack at the time of the search. *See Bunch*, 305 Or App at 67. "A defendant may abandon his constitutionally protected interests in property *** by voluntarily manifesting an intention to relinquish them, in which case a warrantless search of the property does not violate his rights." *State v. Montiel-Delvalle*, 304 Or App 699, 706, 468 P3d 995 (2020).

Here, defendant had constitutionally protected possessory and privacy interests in the backpack before Hasbrook drove the truck away with the backpack inside. *See State v. Standish*, 197 Or App 96, 99-100, 104 P3d 624, *rev dismissed as improvidently allowed*, 339 Or 450 (2005)

("If a defendant has actual or constructive possession of property immediately before it is searched, the defendant has a constitutionally protected possessory interest in that property."). Thus, the specific issue before us is whether defendant abandoned his constitutionally protected interests after he stepped out of the car and Hasbrook drove away.

"[T]he determination whether a defendant has relinquished a constitutionally protected interest in an article of property involves both factual and legal questions, which this court reviews in the same manner that it reviews other search or seizure questions arising under Article I, section 9." *Cook*, 332 Or at 607. We defer to the trial court's findings of historical fact if evidence supports them but determine as a matter of law whether those facts are sufficient to constitute abandonment. *Id*. The state bears the burden of proving by a preponderance of the evidence that a defendant has abandoned his constitutionally protected interests in an article of property. *State v. Dickson*, 173 Or App 567, 571, 24 P3d 909, *rev den*, 332 Or 559 (2001).

"In determining whether a person has abandoned a constitutionally protected interest in an article of property, the court considers whether the defendant's statements and conduct, in light of the totality of the circumstances, demonstrated that the person unequivocally relinquished all constitutionally protected interests in the property." *Bunch*, 305 Or App at 67 (citing *State v. Brown*, 348 Or 293, 302, 232 P3d 962 (2010)). Several factors are relevant to that determination, including: (1) "whether the defendant separated himself from the property as a result of police instruction or illegal police conduct"; (2) "whether the defendant left the property on public or private property"; (3) "whether the defendant made any attempt to hide the property or in any other way manifest an intention to the police that he \* \* \* was attempting to maintain control over it"; (4) "whether the defendant has left his property under circumstances which objectively make it likely that others will inspect it"; (5) "whether the defendant has placed the item in plain view"; and (6) "whether the defendant gave up his rights to control the disposition of the property." *State v. Ipsen (A157082)*, 288 Or App 395, 399-400, 406 P3d 105 (2017) (internal quotation marks omitted).

Before considering the present case, we briefly summarize several cases which aid in our application of the above factors. In *State v. Brown*, we concluded that the defendant did not abandon a McDonald's bag that he set down while conversing with a police officer and then left in a parking lot when he went across the street with that officer. 273 Or App 347, 352, 359 P3d 413 (2015). We explained that the defendant made no statements disclaiming his interests in the bag and that "setting what appears to be a sack lunch and a drink on a nearby flat surface while carrying on a conversation is not conduct that relinquishes all constitutionally protected interests in the property." *Id*. at 353. We acknowledged that the "low-value" nature of the bag "could point toward a conclusion of abandonment" but determined that "that one circumstance, when viewed in conjunction with all of the other circumstances" was "not sufficient to support the conclusion that defendant relinquished all constitutionally protected interests in the bag." *Id*. at 354. We further noted that, when the defendant moved across the street with the officer, he "did not move far from the bag" and "had been separated from the bag for only 10 to 20 minutes." *Id*. at 353. Under those circumstances, it was as likely that the defendant left the bag "out of inadvertence" and "did not intend to give up his interests in the bag" as it was that the defendant "discarded the bag." *Id*.

In *State v. Kendall*, we held that, considering "the entire circumstances," the defendant did not abandon his protected interests in his bicycle or the bag affixed to it when he went inside of a house, leaving the bike outside on an adjoining lot. 173 Or App 487, 491, 24 P3d 914 (2001). We reasoned that, although "defendant separated himself from his possessions while being pursued by the police, he placed those possessions in the bushes on private property" as opposed to a public place "where it was likely that members of the public would inspect them." *Id*. at 491-92. Additionally, we concluded that "the nature of the property involved" was significant because it was "common for a person to leave property of [that] nature outdoors, unattended." *Id*. at 492.

In contrast, we concluded the defendant did abandon his property in *Dickson*, 173 Or App at 576. There, the

defendant saw the police approaching, ran, and dropped his backpack "in plain sight of officers in close pursuit of him." *Id*. at 575. We explained that the defendant did not take "any action indicating that he was attempting to maintain control of the backpack, such as hiding it in a place from which he might later be able to retrieve it." *Id*. Rather, when the defendant dropped the backpack in front of the officers who pursued him, "[t]hat circumstance made it objectively likely that others would inspect the backpack" and indicated that the defendant "did not intend to reclaim the backpack." *Id*.

We conclude that, considering each factor and the totality of the circumstances, defendant did not unequivocally manifest an intention to relinquish his constitutionally protected interests in the backpack. We consider each factor in turn, but the key inquiry remains whether defendant, through words or conduct, unequivocally manifested an intention to relinquish his constitutionally protected interests. *Bunch*, 305 Or App at 69 ("Abandonment requires an unequivocal manifestation of an intention to relinquish all constitutionally protected interests in the affected property."); *see also Cook*, 332 Or at 608 ("[F]or constitutional purposes, the question to be resolved * * * is whether the defendant's statements and conduct demonstrated that he relinquished all constitutionally protected interests in the articles of property.").

Here, the state correctly asserts that defendant's separation from the backpack was not the result of police instruction or illegal police conduct. Defendant left the backpack in plain view in the back seat of a stolen truck to which defendant had no legal right. Although that truck was parked on private property—the gas station parking lot—that property was open to the public.

Nevertheless, defendant's conduct manifested an intention to maintain control of his backpack. Initially, defendant left his backpack in a truck while shopping at a convenience store adjoining the gas station where the truck was parked. Defendant's choice to leave the backpack in a location that was generally inaccessible to the public, but would likely remain accessible to him, reflects an intent to reclaim the backpack. Like the defendant in *Brown*,

defendant made no statements disclaiming ownership of the backpack, and he remained physically near the backpack—he did not leave the gas station until after Hasbrook drove away. And, as in *Brown* and *Kendall*, defendant's treatment of his property was common—people regularly leave items in parked cars while shopping or running errands close by with the expectation that those items will not be subject to inspection. *See Kendall*, 173 Or App at 492 (noting that it is common to leave vehicles unattended outdoors). Such behavior reflects an intent to maintain control over the property, not abandon it.

Those same facts—defendant's proximity to the car and backpack, the placement of the backpack in an apparently secure yet accessible location, and defendant's treatment of the backpack in an ordinary manner—lead us to conclude that defendant did not give up his rights to control the disposition of the property. "Nothing in the case law under Article I, section 9, suggests that a citizen must keep his hands on his property at all times—even in public places—in order to retain a protected interest in that property." *Brown*, 273 Or App at 353.

Finally, defendant did not leave the backpack under circumstances that made it likely that others would inspect it. As noted, the backpack was in a car, and thus inaccessible to passersby and somewhat shielded from public view. Moreover, the circumstances here are unlike those in *Dickson*, where the defendant dropped his backpack "in plain sight of officers in close pursuit of him." 173 Or App at 575. Under those circumstances, the defendant's behavior indicated to the police that the backpack likely contained evidence of a crime. That was not so in the present case. The officers did not discover defendant's backpack while in "close pursuit" of defendant as he fled.

The state asserts that defendant's willingness to leave the backpack in a stolen vehicle demonstrates his intention to relinquish his constitutional interests in the backpack. According to the state, that is so because defendant "had no right to the truck" and, thus, "had no reason to believe the truck was a secure location." In support of its argument, the state points to *Stubblefield*. There, the

defendant crashed a stolen truck while attempting to elude a police officer in close pursuit. *State v. Stubblefield*, 279 Or App 483, 484, 380 P3d 1126, *rev den*, 360 Or 697 (2016). After the crash, the officer ordered the defendant to exit the truck, but the defendant ran from the truck instead. We held that the defendant had abandoned closed containers within the truck, because the defendant "left the containers in a stolen truck—a location where defendant would have had no lawful authority to retrieve them, absent the (unlikely) assistance of the truck's owner, something that defendant would have known when he decided to leave the containers behind." *Id*. at 489.

    The determinative facts in *Stubblefield* are distinguishable from those in the present case. There, the defendant left the crashed car unoccupied while fleeing from an officer in pursuit. The *Stubblefield* defendant would have known that the stolen vehicle would be towed and subject to a search in the immediate future. Under the circumstances of the present case, defendant had far less reason to believe that the vehicle would be subject to an immediate search or seizure by the police. Therefore, his act of leaving the backpack in a truck, even a stolen one, does not unequivocally indicate defendant's intent to abandon it.

    We reach the same result when considering defendant's second separation from the backpack, when Hasbrook drove the truck away from the gas station. Again, we note that the applicable test is whether defendant "voluntarily manifest[ed] an intention to relinquish [his protected interests]." *Montiel-Delvalle*, 304 Or App at 706. The state contends that defendant "acceded to his companion driving away in [the truck]," and, therefore, that his failure to act indicated defendant's intent to relinquish his protected interests in the backpack. We disagree. Defendant's behavior here—submitting to an ongoing DUII investigation—does not unequivocally reflect an intent to abandon his property. Nor does defendant's failure to verbally claim the backpack reflect such an intent, because "although a defendant's statement disclaiming any interest in an object may suffice to communicate such an intention, a defendant's silence does not." *State v. Jones*, 280 Or App 135, 139, 380 P3d 1132 (2016).

In sum, we conclude that defendant did not unequivocally manifest an intention to relinquish his constitutionally protected interests in his backpack when he left it in the truck. Because the state did not meet its burden of proving that the search of that backpack was lawful, the warrantless search violated defendant's Article I, section 9, rights, and evidence discovered as a result of that search must be suppressed.[5]

Reversed and remanded.

---

[5] In appeals arising from conditional pleas, we have "consistently declined to engage in a harmless error analysis." *State v. Leach*, 294 Or App 639, 646, 432 P3d 310 (2018).